GENE E. LYNN AND ELIZABETH A. LYNN, HUSBAND AND WIFE, APPELLANTS, v. ANDREW A. INGALLS AND WHITE PINE CARE CENTER, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 14177

February 24, 1984                                        676 P.2d 797

*Gary D. Woodbury,* Elko; *C. E. Horton,* Ely, for Appellants.

*Orrin Grover,* Molalla, Oregon, for Respondents.

## OPINION

*Per Curiam:*

The present appeal questions the district court's interpretation of two provisions contained in a commercial nursing home lease. The controversy concerns the nature and extent of the lessors' rights and remedies against the lessees in the event of default.

The lease was executed in November, 1974, between Careage Corporation as lessor and Andrew Ingalls and Thomas Stutchman[1] as lessees for a 20-year term with two consecutive options to renew the lease for additional 10-year periods. Careage Corporation subsequently assigned its interest in the lease to the present appellants, Gene E. Lynn and Elizabeth A. Lynn, in November of 1975.

In the event that the lessees failed to abide by any of the obligations set forth in the lease, the lessors were provided with various remedies and sources of security from which to seek

[1]Thomas Stutchman subsequently sold his interest in the White Pine Care Center, Inc., to Andrew Ingalls. Thomas Stutchman is not involved in the present appeal.

satisfaction. Among the security devices granted to the lessors were security interests in the lessees' equipment and fixtures, as well as an all-encompassing security interest in the nursing home business itself, the White Pine Care Center, Inc.

Upon the lessees' default, the lease established various remedies of which the lessors could take advantage. Under paragraph 28 of the lease, the lessors could re-enter the premises, take possession of all of the nursing home's business assets, and declare the lease to be terminated. The lessors had the option of either storing these assets at the owner's expense or taking title to them as satisfaction for any outstanding obligations owed.

Under paragraph 24(b) of the lease, if the lessors elected to file a suit in equity, a receiver could be appointed to take charge of the nursing home during the pendency of the litigation. The receiver was additionally authorized to sell the nursing home business in order to pay off existing claims. In this regard, the lessors were provided with the "first option" to buy the business from the receiver.[2]

The lease went into effect upon the completion of the nursing home in April, 1976. The lessees immediately experienced cash flow problems and failed to pay rent for the first five months of occupancy. The lessors renegotiated the amount due for the back rent and accepted a promissory note from the lessees which was to be paid back as an increase in the monthly rental payments. The lessees subsequently defaulted on the rental payments for December of 1977 and January of 1978.

On January 6, 1978, the lessors sent the lessees a notice of default informing the lessees that if the outstanding obligations were not cured within 30 days, the lease would be terminated.

On April 6, 1978, the lessors initiated the present action seeking to terminate the lease and recover the amounts due. The complaint also prayed for the appointment of a receiver pursuant to the remedial provisions of the lease.

On April 21, 1978, a receiver was appointed to take possession of and operate the White Pine Care Center. Almost immediately thereafter the nursing home started to show a marked improvement and eventually became a profitable enterprise.

After a trial without a jury, the district court ruled in favor of the lessors but interpreted the lease so as to require an election of remedies by the lessors. Under the district court's interpretation the lessors must either seek a "complete forfeiture" by utilizing the provisions of paragraph 28 of the lease, wherein

---

[2]Since the lease did not establish a specified price at which the option could be exercised, the "first option" language can only be construed as a right of first refusal on the sale of the business.

the lessor could re-enter the premises, terminate the lease, and take possession of the White Pine Care Center or must seek judicial termination with the optional appointment of a receiver. The district court construed the lessors' use of a receiver as an election which called for a "partial forfeiture" of the lease. The district court explained the latter, stating, "[b]y seeking a receiver, rather than complete foreclosure, Plaintiff has elected the remedy afforded by Paragraph XXIV(b). Thus, the lease, by its very terms, contemplates the lessee's interest in the personal property and nursing home business will be sold rather than completely forfeited to lessor." The district court reasoned that the remaining term of the lease was a business asset of the White Pine Care Center which was to be sold at the receiver's sale. It ordered the receiver to sell the remaining term of the lease along with the other assets of the nursing home in order to satisfy the lessees' obligations.

The district court's actions, although premised as an interpretation of the lease, were based on the principle that the law abhors a forfeiture. The district court construed the receiver's sale of the business to include the remaining lease term as a means of ensuring that the nursing home's "opportunity to do business" is recognized in the sale. The court reasoned that if the nursing home business were to be sold without the outstanding lease term, Ingalls would not be adequately compensated for the value of the business as a going concern, and the lessors would thus be allowed unfairly to terminate the entire lease and require the sale of the nursing home not as a going business but at its liquidation value.[3]

The lessors contest the district court's determination that the use of a receiver under paragraph 24(b) of the lease precludes the lessors from terminating the remaining term of the lease.

We agree with the lessors that the lease does not call for an unreasonable forfeiture of the lessees' right to do business. When a lessee fails to make rental payments, the lessor may elect to declare the lease terminated and seek an unlawful detainer action to oust the defaulting tenant. See NRS 40.253.

[3]A bid was submitted for the receiver's sale by American Care Centers, Inc., which included the remaining term of the lease in its valuation. Based on an estimated 15 years remaining on the original lease, the American Care Center's bid was for $175,000.00. On the other hand, the lessors' bid, which did not reflect the remaining term of the lease, was for: (1) $10,000.00 cash; (2) all of the lessors' interest in the tenant's personal property, licenses, and goodwill; and (3) the assumption of all liabilities. The approximate value of this bid is $90,000.00.

In the instant case, the lessors had the undeniable right to evict the tenant. If the lessors had sought to utilize an unlawful detainer action instead of a receiver, the tenants would have been forced to remove themselves as well as all of the assets of the nursing home business from the leased premises. Therefore, although the law abhors a forfeiture, there is nothing repugnant to public policy in allowing for the termination of a lease and eviction of a tenant who fails to pay the rent.

Similarly, there is nothing violative of public policy in permitting a lessor to terminate a lease and to seek the appointment of a receiver to conduct business operations while the lease termination is being litigated.

The use of the receiver to collect the rents and profits which were conditionally assigned upon default and to maintain the assets of the White Pine Care Center which were subject to the lessors' security interest is consistent with the lessors' right to terminate the lease. The lessors were merely seeking to ensure that the assets from which the outstanding debts would be satisfied would be preserved until termination of the lease was judicially determined. Although the district court construed the remaining term of the lease as the equivalent to the lessees' right to do business, it is apparent that when the lessees failed to pay rent, the lessees had, in effect, "forfeited" the right to do business at that particular location. There is nothing unreasonable or unconscionable about this kind of a lease provision and the election alluded to by the district court is not required by the terms of the lease agreement.

The use of a receiver by a lessor to preserve the assets of a business operated on the leased premises is not inconsistent with the right to declare the lease terminated. Since the lessor may evict the defaulting tenant for failure to pay rent, it is allowable under the terms of the lease to permit a receiver's sale which does not include the remaining term of the lease.

In addition to questioning the district court's interpretation of the lease itself, the lessors argue that the nursing home business should be sold at the receiver's sale for the value of the business as of the time at which the receiver was appointed. The lessors argue that it would be inequitable to allow the Ingalls to enjoy the fruits of the receiver's efforts in light of the fact that the lessors had extended $45,000.00 to the receiver to keep the business operating as well as negotiating with the

120

equipment supplier to forebear from repossessing the hospital equipment. With this contention we disagree.

A receiver is generally appointed to take possession of property and preserve its value where it appears to the court that neither party should hold it. Bowler v. Leonard, 70 Nev. 370, 269 P.2d 833 (1954). The receiver is, in effect, a neutral party who preserves the value of the asset within his or her possession for the benefit of whoever is subsequently determined to be entitled thereto. *Id.* Although the receiver holds the property for the benefit of the party who is ultimately determined to be entitled to it, title to the property does not change by the mere appointment of a receiver. Title to the property in receivership does not change until the owner is divested of it by a receiver's sale, or an act of his own.

In the case at hand, the receiver was placed into possession of the nursing home business in order to maintain and preserve the value of the business until it was ultimately determined by the court that the lessors were entitled to resort to the secured assets in satisfaction of the judgment. Until the court made such a determination, the title to the assets in receivership as well as the profits which flowed therefrom remained in the name of Ingalls.

The district court recognized that the lessors' loan to the receiver had been repaid with interest. Therefore, the lessors had been adequately compensated for the receiver's certificate. The value of the nursing home business was properly determined as the fair market value at the time of the receiver's sale.

Finally, the lessors argue that the district court abused its discretion by awarding only $16,047.65 in attorney's fees.

In determining the value to be attributed to the services performed by the lessors' attorney, the district court applied the factors enumerated in Brunzell v. Golden Nat'l Bank, 85 Nev. 345, 455 P.2d 31 (1969). Upon review of the record we see no error in the district court's award.

The judgment by the district court ordering a sale of the remaining term of the lease is reversed. All other matters are affirmed.