GERALD H. SHAW, EXECUTOR OF THE ESTATE OF ELIZABETH A. LYNN, Appellant, *v.* THOMAS R. STUTCHMAN, and FALLON CONVALESCENT CENTER, INC., a Nevada Corporation, Respondents.

No. 18944

March 30, 1989                                    771 P.2d 156

*Gary D. Woodbury,* Elko, for Appellant.

*I. R. Ashleman,* Reno, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

On October 29, 1979, Elizabeth A. Lynn entered into an agreement with respondents Thomas R. Stutchman and Fallon Convalescent Center, Inc. ("FCC") whereby Stutchman, individually and on behalf of FCC, assigned to Lynn certain debts allegedly owed to them. In return, Lynn promised, *inter alia,* not to enforce any judgment that might be entered against Stutchman in a pending action.[1] Lynn died testate on April 4, 1984. Thereafter, the King County Superior Court, State of Washington, entered an order admitting Lynn's Last Will and Testament to probate, appointing appellant Gerald H. Shaw executor of Lynn's Estate, and issuing Letters Testamentary to Shaw.

On October 24, 1985, John M. Woodley, on behalf of the Lynn Estate, brought the suit that is the subject of this appeal against Stutchman and FCC.[2] The complaint alleged that Woodley was "the duly authorized and acting executor of the estate of Elizabeth A. Lynn," and that Stutchman and FCC had never satisfied portions of the 1979 agreement. In answering the complaint, Stutchman and FCC stated they were "without knowledge or information sufficient to form a belief as to the truth of the [allegation that Woodley was the executor of the Lynn Estate], and therefore, upon such lack of knowledge or information, deny the same."

Subsequently, Gary Woodbury, the Nevada attorney employed to pursue the action, learned that Shaw, rather than Woodley, was the executor of Lynn's Estate and should have been named plaintiff. Pursuant to a stipulation between the parties, the district

---

[1]The action referred to eventually reached this court as Lynn v. Ingalls, 100 Nev. 115, 676 P.2d 797 (1984).

[2]Woodley, an attorney licensed in Washington, represents the Lynn Estate. He employed local counsel here to pursue the action.

court ordered that Shaw be substituted for Woodley. Counsel for Stutchman and FCC later learned that neither Woodley nor Shaw ever obtained authorization to act as executor of Lynn's Estate in this state.

On September 11, 1987, almost two years after the complaint was filed, Stutchman and FCC moved for summary judgment. They argued that Woodley, who never had authority to act on behalf of Lynn's Estate, lacked "standing" to bring the suit and that Shaw, although executor of Lynn's Estate in Washington, had neither initiated ancillary administration nor qualified to act as executor of Lynn's Estate in Nevada. Thus, according to Stutchman and FCC, the district court was without subject matter jurisdiction and they were entitled to summary judgment as a matter of law.

Following a hearing on the motion, the district court ruled that Shaw's authorization to act as executor in Washington lacked effect in this state and, therefore, Shaw could not have initiated the suit. Apparently agreeing that it lacked jurisdiction, the district court granted summary judgment in favor of Stutchman and FCC. This appeal followed.

## DISCUSSION

Shaw concedes that in the absence of authorization by statute, a foreign executor's commencement of suit in this state is defective. He argues, however, that the defect is one of capacity, not jurisdiction. We agree.

Most courts that have addressed the issue Shaw raises have concluded that a foreign representative's failure to obtain authorization to act on behalf of an estate involves a defect of capacity rather than subject matter jurisdiction. *See* Lefebure v. Baker, 220 P. 1111 (Mont. 1923). *See also* Canfield v. Scripps, 59 P.2d 1040, 1042 (Cal.Dist.Ct.App. 1936) (right of foreign administrator to maintain action involves only question of capacity to sue); 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1559 (1971) ("Capacity has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest or is the real party in interest.").

NRCP 17(b) provides that "[t]he capacity of an individual, *including one acting in a representative capacity,* to sue or be sued shall be determined by the law of this State. . . ." (emphasis supplied). As the district court correctly noted in its order granting summary judgment, the Nevada Revised Statutes contain no statutory provision permitting suit by a foreign executor, and, in the absence of statutory law, the common law controls. *See* NRS 1.030. Under the common law,

[e]very grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, de jure, extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interest of its own citizens. . . . Hence it has become an established doctrine that an administrator, appointed in one state, cannot, in his official capacity, sue for any debts due to his intestate in the courts of another state. . . .

Vaughan v. Northrup, 40 U.S. (15 Pet.) 1, 6 (1841). *See also* Matter of the Estate of Widemeyer, 741 S.W.2d 758, 760 (Mo.App. 1987) ("an administrator, appointed in state A, cannot sue in his representative capacity in state B in the absence of a statute in state B authorizing him to do so. . . ."). Thus Shaw, and a fortiori Woodley, lacked legal *capacity* to bring suit in this state on behalf of Lynn's Estate.

Shaw also argues that if the defect is one of capacity, then it may be waived. Again, we agree. NRCP 9(a), in pertinent part, provides:

It is not necessary to aver the capacity of a party to sue or to be sued or the authority of a party to sue or be sued in a representative capacity. . . . When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, *he shall do so by specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

(emphasis supplied).

In Kucharski v. Pope & Talbot, 4 FRD 208 (S.D.N.Y. 1944), a fact situation similar to the instant matter was presented. There, a foreign administratrix, appointed in Pennsylvania, brought suit in New York. The defendant answered denying knowledge or information sufficient to form a belief concerning the plaintiff's allegation that she was the administratrix of the decedent's estate. Subsequently, the defendant moved for summary judgment on the ground that the plaintiff lacked capacity to sue in New York. In denying the motion, the district court stated: "Such a denial of knowledge or information did not satisfy the requirements of [FRCP] Rule 9(a) and consequently by the terms of the Rule it

failed to raise an issue as to plaintiff's legal capacity." *Id.* at 209. *See also* Tractortechnic Gebrueder Kulenkempft & Co. v. Bousman, 301 F.Supp. 153, 155 (E.D.Wis. 1969) ("A mere denial of information is not the equivalent of a specific negative averment."); Brown v. Music, Inc., 359 P.2d 295, 301 (Alaska 1961) (answer denying allegation based on want of knowledge or information not sufficient to raise issue of capacity, and failure to raise issue in manner specified in rule results in waiver of defense); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1294 (1969) ("[A]n issue of capacity cannot be raised by a general denial. Nor can the issue be raised by a denial of knowledge or information sufficient to form a belief, at least not when the information concerning capacity is a matter of record or is readily accessible to the party attempting to put the matter in issue.").

Here, the complaint affirmatively alleged Woodley to be the executor of the Lynn Estate. Approximately five months after the complaint was filed, and after making a demand and motion for a change of venue and a motion for a more definite statement, Stutchman and FCC answered. In their answer, Stutchman and FCC stated: "Defendants are without knowledge or information sufficient to form a belief as to the truth of the [allegation that Woodley is the executor of the Lynn Estate], and therefore, *upon such lack of knowledge or information, deny the same.*" (emphasis supplied). Not until September 11, 1987, almost two years after the complaint was filed, did Stutchman and FCC in their motion for summary judgment raise the issue of Woodley/Shaw's "standing."

We believe that the authorities cited above are correct in suggesting that respondents' denial of Woodley's authority to sue was insufficient to raise the issue of Woodley's representative capacity. Respondents, with a minimum of effort, could have determined the identity of the executor of Lynn's Estate and whether that person had qualified to act as executor in Nevada. Having failed to raise the issue of capacity by "specific negative averment," as required by NRCP 9(a), Stutchman and FCC waived their objection. *See* Tobler & Oliver Constr. v. Nevada St. Bank, 89 Nev. 269, 510 P.2d 1364 (1973);[3] *Music, Inc.,* 395

---

[3]In *Tobler,* we stated that NRCP 8(c) and NRCP 9(a) require allegations of lack of standing and capacity to be pled affirmatively and with particularity. *Tobler,* 89 Nev. at 271, 510 P.2d at 1365. This was not entirely correct. We note here that NRCP 9(a)'s requirement of a "specific negative averment" is not an affirmative defense governed by Rule 8(c). *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1294 n.32 (1969). When the issue of lack of capacity is properly raised by a specific negative averment, the burden of persuasion rests with the party claiming capacity.

P.2d at 301. The subsequent substitution of Shaw for Woodley did not affect respondents' previous waiver.

## CONCLUSION

We conclude that the district court erred in granting summary judgment in favor of Stutchman and FCC. Although a foreign representative's commencement of suit in this state without authorization is defective, the defect is one of capacity. As such, if the opposing party does not raise the issue of capacity in the manner provided in NRCP 9(a), the objection is waived.

Accordingly, we reverse the district court's order granting Stutchman and FCC summary judgment, and remand the case to that court for further proceedings.