EILEEN ANES, Appellant, *v.* THE CROWN PARTNER-SHIP, INC., a Nevada Corporation; FLAMINGO/BRUCE PARTNERSHIP, aka FLAMINGO/BRUCE LIMITED PARTNERSHIP, a Nevada Limited Partnership; BRUCE DEVELOPMENT COMPANY LIMITED PARTNERSHIP, a Nevada Limited Partnership; and AMERICAN BONDING COMPANY, Respondents.

No. 26851

January 30, 1997                    932 P.2d 1067

*Brian K. Berman,* Las Vegas, for Appellant.

*Gordon, Silver & Beesley* and *Thomas H. Fell,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Appellant Eileen Anes ("Anes") works as a marriage and family therapist and leases an "executive suite" in the Magna Executive Center ("the Center") in Las Vegas. Her lease, a renewal entered into with the bankruptcy trustee for the Center's owner Flamingo/Bruce Partnership ("Flamingo"), commenced on May 1, 1993, and was slated to end on April 30, 1996. The executive suite lease arrangement provides Anes with various services including access to a receptionist, a janitor, a fax machine, a postage meter, and a conference room. For these services, Anes pays significantly more than the market rate for such premises.

After a primary partner of Flamingo filed for bankruptcy in October 1993, the two deed holders on the Center petitioned the district court to appoint a receiver for the property. The receivership order issued by the district court required the appointed receiver, respondent Crown Partnership, Inc., to increase occupancy rates at the Center, and authorized Crown to "take such steps as Crown believes necessary or desirable to cause the Property to be occupied by tenants; . . . and to modify or cancel leases as Crown may deem appropriate in its sole and absolute discretion." The order also provided that "any obligation incurred by Crown as authorized by this Order shall be paid solely from the cash flow derived from the property." The district court also required Crown to obtain a security bond. Crown acquired this bond from respondent American Bonding Company.

Within six months, the majority of the other leaseholders in the building, including all others in Anes' suite, had vacated the premises. After Anes refused to move to another suite in the Center, Crown allegedly began to withhold many of the services required by the lease and harassed and intimidated Anes in order to force her to relocate to another suite.

On July 15, 1994, Anes filed a complaint against respondents (collectively "Crown") alleging breach of contract, breach of the covenant of quiet enjoyment, breach of the duty of good faith and fair dealing, declaratory relief, and for enforcement of liability of

the surety. Anes did not obtain leave of the court to proceed against Crown. On October 12, 1994, Anes filed a motion for preliminary injunction requiring Crown to restore all services under the lease, and prohibiting Crown from engaging in any further harassment. Crown opposed the motion and filed a countermotion for summary judgment. The district court denied Anes' motion and granted Crown's countermotion for summary judgment.

## DISCUSSION

Summary judgment is only appropriate when, after a review of the record viewed in the light most favorable to the nonmoving party, there remain no issues of material fact. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). A party opposing summary judgment may not rely on his allegations to raise a material issue of fact where the moving party supports his motion with competent evidence. Garvey v. Clark County, 91 Nev. 127, 130, 532 P.2d 269, 271 (1975). The court's review of a summary judgment order is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

Anes asserts that although Crown had the power under the district court's receivership order to modify or cancel leases on the premises, Crown accepted the whole of Anes' lease by not rejecting it. Crown contends that it has no fiduciary duty to Anes and that its actions did not exceed the scope of its order of appointment.

Customarily, a receiver is a neutral party appointed by the court to take possession of property and preserve its value for the benefit of the person or entity subsequently determined to be entitled to the property. Lynn v. Ingalls, 100 Nev. 115, 120, 676 P.2d 797, 800-01 (1984). As a general rule, state law allows receivers to reject, within a reasonable time, outstanding executory contracts of the owner of the estate which is being administered. 66 Am. Jur. 2d *Receivers* § 223 (1973). However, adoption of existing executory contracts may be inferred by the actions of the receiver or acceptance of the benefits of the contract. *Id.;* 2 R.E. Clark, *Clark on Receivers* §§ 428-428(c) (1959) [hereinafter "*Clark*"]. We find this line of law equitable and now hold that a receiver, stepping into the shoes of a lessor, which fails to use its court-authorized powers to cancel or modify an existing executory lease within a reasonable time, and accepts performance from the lessee, impliedly adopts that lease.

In the instant matter, Crown had the power, at its sole discretion, to modify or cancel Anes' lease. From our review of the

record, it does not appear that Crown exercised its power to modify or reject Anes' leasehold interest within a reasonable time, or that it notified Anes of its intention to do so. Crown accepted rental payments from Anes and allowed her to remain in possession. Crown also continued to provide Anes with some of the professional services outlined in the lease. Accordingly, we conclude that a substantial issue of material fact exists as to whether Crown impliedly adopted Anes' lease.

Crown also contends that receivers are insulated from liability where the party suing fails to obtain leave of court prior to bringing the cause of action.

Generally, a receiver cannot be sued without leave of the appointing court. *See, e.g.,* Barnette v. Wells Fargo Nevada Nat. Bank, 270 U.S. 438, 439 (1926). The purpose of the rule is to accommodate all claims possible in the receivership action under the supervision of the appointing court, and to render the receiver answerable solely to that court. Vitug v. Griffin, 262 Cal. Rptr. 588, 591 (Ct. App. 1989). However, where the receiver acts beyond the scope of its court-derived authority such that it may be sued as an individual, leave of the court is unnecessary. 66 Am. Jur. 2d *Receivers* § 465. Moreover, express authorization granted by the appointing court permitting the receiver to appear in and defend a suit in another court is equivalent to granting leave of the court. *See Barnette,* 270 U.S. at 441-42.

Here, the district court, in its order appointing receiver, granted Crown the right to defend all legal proceedings and claims involving the property. Crown asserted that right by defending Anes' claim in the district court. In addition, the claims raised by Anes concern Crown's liability for actions performed outside the scope of its authority. Accordingly, we conclude that leave of the court was unnecessary in the instant matter.[1]

Crown contends that Anes is precluded from recovering on her breach of contract claim from Crown because the two parties are not in privity of contract, but are only in privity of estate. Crown also contends that it has met its obligations under the lease by providing Anes with possession and quiet enjoyment (*i.e.,* the

---

[1] Crown also asserts that Anes' failure to object to Crown's appointment as the property's receiver bars her right to object to Crown's subsequent conduct. Crown points to no evidence showing that Anes had knowledge of the proceedings related to Crown's appointment, that she had a right to be involved, or that she was in fact involved in them in any way. Thus, we conclude that the issue is without merit. Furthermore, Crown gave no legal authority for this proposition and thus this court need not address it. *See* Watson v. Watson, 95 Nev. 495, 497, 596 P.2d 507, 508 (1979).

covenants running with the land required where privity of contract is absent). Anes contends that by leasing an executive suite for which she pays a premium, she is entitled to receive the full services guaranteed under the lease.

This court has recognized the privity of contract/privity of estate distinction. *See, e.g.,* Hornwood v. Smith's Food King No. 1, 107 Nev. 80, 85, 807 P.2d 208, 212 (1991). However, Nevada law does not address this distinction as it pertains to lessor-receivers and the adoption of executory leases.

Several federal cases hold that a receiver adopting a lease holds the lease by privity of estate only. 66 Am. Jur. 2d *Receivers* § 234 (citing United States Trust Co. of New York v. Wabash R.R. Co., 150 U.S. 287, 299-300 (1893); Madden v. La Cofske, 72 F.2d 602, 605 (9th Cir. 1934)); *see also* In re Wil-Low Cafeterias, 111 F.2d 83, 84-85 (2d. Cir. 1940). However, these cases are not dispositive of the instant matter. The receivers in *United States Trust, Madden,* and *In re Wil-Low Cafeterias* stepped into the shoes of *tenants* and vacated the premises, but did not incur liability for their failure to pay the remaining rent (*i.e.,* their breach of the covenant to pay rent).

It would be unjust to allow a receiver which has adopted a lease to disregard material portions of the lease on the basis that the parties lack privity of contract. After the receiver's adoption of the lease, the lessee qualifies as a party with some interest in the property. *See* Fullerton v. District Court, 111 Nev. 391, 400, 400 n.8, 892 P.2d 935, 941, 941 n.8 (1995). Therefore, we hold that a receiver, acting in the stead of a lessor, which adopts an executory lease without modifying the terms of that lease within a reasonable time, may not later deny the lessee the full benefits of that lease. *See* Johnson v. California-Washington Timber Co., 296 P. 159, 162 (Wash. 1931); *see also* Greif Bros. Cooperage Co. v. Mullinix et al., 264 F. 391 (8th Cir. 1920). In the instant matter, we conclude that if Crown adopted Anes' lease, a question of fact that has not yet been resolved, Crown was bound to meet all of the terms of Anes' lease.

Crown also argues that the cancellation provision in the district court's order appointing receiver precludes Crown's liability for breach of contract under a theory of quasi-judicial immunity. Anes asserts that even if quasi-judicial immunity exists, it is unavailable to Crown due to its intentional misconduct.

A receiver appointed by the court acts as an officer of the court. Bowler v. Leonard, 70 Nev. 370, 383, 269 P.2d 833, 839 (1954). A receiver who "faithfully and carefully carries out the orders of the appointing judge" shares the judge's judicial immunity.

Kermit Const. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir. 1976). Thus, a receiver authorized by the court to continue a business operation, or which is performing duties authorized by the court, is not personally liable for any losses incurred when it acts in good faith and its own misconduct or negligence did not cause the loss. 66 Am. Jur. 2d *Receivers* § 442. Any judgments rendered in such cases are payable from funds in the receiver's hands (*i.e.*, stemming from the receivership estate) if the receiver was acting in its official capacity. *Id.* § 442; *accord* Norman v. Trison Development Corp., 832 P.2d 6, 9 n.11 (Okla. 1992).

However, the receiver must not exceed the limits of the authority granted by the court and must act for the benefit of "all persons interested in the property." *Fullerton,* 111 Nev. at 400, 892 P.2d at 941. Indeed, a receiver may be personally liable if he or she acts outside the authority granted by the court. Interlake Co. v. Van Hake, 697 P.2d 238, 240 (Ut. 1985); Krist v. Aetna Cas. & Sur., 667 P.2d 665, 671 (Wyo. 1983); *accord* 2 *Clark,* § 428; 66 Am. Jur. 2d *Receivers* § 367.

Here, the district court authorized Crown to cancel or modify any lease in the Center and to "take such steps as Crown believes necessary or desirable to cause the Property to be occupied by tenants; . . . ." While this language admittedly gives Crown broad powers, it was not intended to give Crown the right to harass or intimidate tenants as Anes alleges. In fact, the district court noted in its order that "[f]rankly, if the only issue were Anes being harassed I would find she is." Accordingly, we conclude that there are remaining factual disputes as to whether Crown exceeded its district court mandate by allegedly harassing Anes, and, consequently, whether it "faithfully and carefully" carried out the district court's orders. *See Kermit,* 547 F.2d at 3. Until that determination is made, Crown's quasi-judicial immunity status remains unresolved.

The district court has not yet had the opportunity to make findings as to all the factual matters presented in this case. Thus, we deem it premature to address issues raised by the parties concerning the funds from which Anes may satisfy any judgment she might receive.

Accordingly, we reverse the order of the district court and remand this case for proceedings consistent with this opinion.[2]

---

[2]THE HONORABLE MIRIAM SHEARING, Chief Justice, and THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.