**133 Nev., Advance Opinion 33**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LARRY L. BERTSCH; AND LARRY L.
BERTSCH CPA & ASSOCIATES,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
KENNETH C. CORY, DISTRICT
JUDGE,
Respondents,
    and
JAY BLOOM,
Real Party in Interest.

No. 69381

FILED

JUN 22 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying petitioners' motion to dismiss.

*Petition granted.*

Adam Paul Laxalt, Attorney General, and Frederick J. Perdomo, Senior Deputy Attorney General, Carson City; Pico Rosenberger and James R. Rosenberger, Las Vegas,
for Petitioners.

Maier Gutierrez Ayon PLLC and Joseph A. Gutierrez and Luis A. Ayon, Las Vegas,
for Real Party in Interest.

BEFORE PICKERING, HARDESTY and PARRAGUIRRE, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Real party in interest Jay Bloom sued petitioners Larry L. Bertsch and Larry L. Bertsch CPA & Associates (collectively, Bertsch) for Bertsch's actions as a court-appointed special master in a lawsuit in which Bloom was a party. The district court rejected Bertsch's defense of absolute quasi-judicial immunity and denied his motion to dismiss Bloom's complaint.

In this original petition for a writ of mandamus, we consider whether a person must seek leave of the appointing court prior to filing suit in a non-appointing court against a court-appointed accountant in his capacity as special master.

Because we extend the *Barton* doctrine[1] to a court-appointed accountant in the capacity of special master, we require an individual to seek leave of the appointing court prior to filing suit in a non-appointing court against a court-appointed special master for actions taken in the scope of his court-derived authority. Thus, we grant the petition.

*FACTS AND PROCEDURAL HISTORY*

On October 11, 2011, Bertsch was appointed as special master by the district court in a lawsuit between Vion Operations, LLC, and Bloom (the Vion litigation). The order stated that Bertsch was to provide forensic accounting services, but would not be personally liable for acts performed as a special master, except in the event of gross negligence, fraud, or willful misconduct.

---

[1]*Barton v. Barbour*, 104 U.S. 126, 127 (1881).

 

After Bertsch filed his preliminary report, but before he filed his final report, Vion's counsel, Lionel Sawyer & Collins (LSC), disclosed to the district court, on August 29, 2012, that it had also represented Bertsch "during the second half of 2011." On October 18, 2012, Bertsch filed his final report. Included in this report were statements relating to how certain companies associated with Bloom had the "earmarks of a Ponzi scheme."

Approximately two hours after Bertsch filed his final report, Bloom filed a motion to disqualify LSC as counsel for the plaintiffs, alleging a conflict of interest with Bertsch. On the next day, October 19, 2012, Bloom issued a *subpoena duces tecum* to Bertsch seeking "any and all documents, emails, and communications with any and all parties to this litigation." Bloom also noticed a deposition of Bertsch for November 20, 2012.

Bertsch moved for a protective order to prevent disclosure of document information and to quash the notice of deposition. The district court granted Bertsch's motion for a protective order in part, finding that Bertsch was not to be treated as an expert witness, but ordered that Bertsch and LSC produce all communications in the matter "for the period between August 1, 2011 and December 17, 2012." The district court reserved ruling on whether to quash the notice of deposition directed at Bertsch.

Pursuant to the district court's order, Bertsch produced documents related to his communications with LSC. Based on the content of these documents, Bloom filed a motion to disqualify Bertsch on February 12, 2013. In this motion, Bloom requested that the district court

SUPREME COURT
OF
NEVADA

(O) 1947A

3

strike Bertsch's report, and for sanctions, arguing that Bertsch's final report was not truly independent because, prior to its submission, 18 versions of the report were exchanged between Bertsch and counsel for Vion with no copies provided to, and therefore no input from, Bloom or any other party. Bloom further argued that Bertsch and LSC worked in concert for the purpose of building a case against Bloom and the other defendants. Bloom's motion contained various emails allegedly supporting his claims that Bertsch acted improperly. Notably, Bloom argued that "[t]he pattern and practice of egregious unethical conduct by LSC [and] Mr. Bertsch . . . has created a private right of action against them individually."

Bertsch opposed the motion, arguing that Bloom failed to show that Bertsch's report was influenced in any way by his former connection with LSC, and the one-on-one communications without the participation of other parties was a procedure known to and accepted by Bloom, and a procedure in which he engaged on dozens of occasions. Bertsch also filed a motion for an order discharging him as special master and accepting his final report, noting that neither party filed a timely objection to the report.

After a hearing on the motion, the district court denied Bloom's motion and discharged Bertsch from his duties as special master on May 13, 2013. With respect to Bloom's arguments for disqualification, the district court found that, pursuant to NCJC 2.11(C), Bertsch should have disclosed his prior attorney-client relationship with LSC; however, the district court also found that Bertsch's undisclosed conflict did not merit disqualification because the alleged conflict no longer existed at the time Bloom raised the issue to the court. The court noted that LSC disclosed the former attorney-client relationship in August 2012, and

Bloom failed to take any action to prevent Bertsch from issuing a final report until October 18, 2012, the same day Bertsch issued his final report. The court further determined that the failure to disclose the former attorney-client relationship did not render the report invalid or erroneous and it accepted the report as written. The court, however, declined to adopt the report as findings of fact or conclusions of law and thus declined to analyze whether the report's findings were clearly erroneous or conduct a de novo review of its conclusions. The court noted that the parties may use it as they see fit and that it may be challenged at trial.

The district court also found that

> [Bertsch] is a fair, impartial, unbiased and highly skilled forensic accountant, and the matters in this case to which the [c]ourt made its reference are in his area of his expertise. The reference to [s]pecial [m]aster in this case was proper.

Following the district court's May 13, 2013, order denying Bloom's motion to disqualify Bertsch, Bloom filed a motion to conduct discovery on Bertsch. On September 11, 2013, the district court denied Bloom's motion to conduct discovery, finding that Bertsch (1) was not to be treated as an expert witness for any purpose in the case, (2) was appointed as a special master under NRCP 53, and by accepting appointment, he assumed the duties and obligations of a judicial officer, and (3) enjoyed the same immunities from discovery as a judge, making his decision-making processes generally undiscoverable. The court reasoned, however, that non-privileged communications that occurred between Bertsch and any third party regarding his report, including specific requests to put anything into the report, were not protected from inquiry and were discoverable. The district court permitted Bloom to conduct a one-hour

deposition of Bertsch limited to non-privileged communications between Bertsch and LSC.

However, prior to any deposition of Bertsch, the Vion litigation was removed to the United States Bankruptcy Court for the District of Nevada. The bankruptcy case was subsequently settled, and the Vion litigation was dismissed with prejudice on October 14, 2014. As a result, Bertsch's deposition was never taken.

After the Vion litigation was dismissed, Bloom filed the underlying complaint against Bertsch alleging gross negligence, fraudulent concealment, willful misconduct, and defamation based on Bertsch's alleged actions in the Vion litigation. In response, Bertsch filed a motion to dismiss, arguing in part that he was entitled to absolute quasi-judicial immunity from suit. The district court denied the motion, finding that Bertsch was only entitled to qualified immunity based on the appointment order in the Vion litigation, which stated that Bertsch could be held personally liable for acts performed pursuant to his special mastership that constituted gross negligence, fraud, or willful misconduct.

Bertsch now petitions this court for a writ of mandamus, arguing that dismissal is required because he is entitled to absolute quasi-judicial immunity and such immunity is not waived by language contained in the order appointing him special master or because his alleged intentional, wrongful conduct fell outside the scope of his duties of special master. Bertsch also argues that Bloom's complaint is jurisdictionally improper, as Bloom did not first seek leave of the appointing court before instituting the underlying action.

*Standard for writ relief*

This court has original jurisdiction to grant extraordinary writ relief. *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. 180, 184, 273 P.3d 861, 864 (2012). Furthermore, writ relief is generally available only "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *see also Halverson v. Miller*, 124 Nev. 484, 487, 186 P.3d 893, 896 (2008).

This court generally "decline[s] to consider writ petitions challenging district court orders denying motions to dismiss because such petitions rarely have merit, often disrupt district court case processing, and consume an enormous amount of this court's resources." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558-59 (2008) (internal quotations omitted). Nevertheless, this court has discretionary authority to consider a petition denying a motion to dismiss when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Id.* at 197-98, 179 P.3d at 559. And, we have recognized that a pretrial claim of judicial or quasi-judicial immunity may merit extraordinary writ relief. *State v. Second Judicial Dist. Court*, 118 Nev. 609, 614, 55 P.3d 420, 423 (2002).

Because Bertsch's petition raises important issues of law in need of clarification—whether one must seek leave of the appointing court prior to filing suit in a non-appointing court against a court-appointed accountant in his capacity as a special master—and involves a claim of quasi-judicial immunity, we exercise our discretion and entertain this petition.

*Bloom was required to seek leave of the appointing court prior to filing a separate complaint against Bertsch*

Bertsch argues that Bloom's underlying complaint was jurisdictionally improper because Bloom failed to seek leave of the appointing district court before filing a separate action against him. Although Bertsch raises this issue for the first time in his reply brief, consideration of this issue is in the interest of justice. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (holding that "[i]ssues not raised in an appellant's opening brief are deemed waived" unless this court, in its discretion, determines that consideration of those issues "is in the interests of justice"). We also note that although Bertsch did not explicitly address this issue during oral argument, he did infer that the issues raised in the action should have been determined by the appointing court.

Bertsch's argument touches on the rule known as the *Barton* doctrine. *See Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000). The *Barton* doctrine is a federal common law rule that requires a party to obtain leave of the bankruptcy court before bringing suit in a non-appointing court against a trustee for acts done in his or her official capacity. *Id.* The doctrine was first articulated by the United States Supreme Court in *Barton v. Barbour*, where the Court held that "[i]t is a general rule that before suit is brought against a receiver [in state court,] leave of the court by which he was appointed must be obtained." 104 U.S. 126, 127 (1881). Over time, circuit courts analogized the position of a receiver in equity to that of a bankruptcy trustee and extended the doctrine accordingly. *Carter*, 220 F.3d at 1252. Going even further, it has been suggested that the doctrine applies more broadly to all court-appointed officers, *Blixseth v. Brown*, 470 B.R. 562, 567 (Bankr. D. Mont.

2012) (stating that the rule generally applies to court "appointed" officers), and has been applied outside the context of bankruptcy proceedings, *see Considine v. Murphy*, 773 S.E.2d 176, 177, 179 (Ga. 2015).

One purpose of the *Barton* doctrine is to prevent dissatisfied parties from freely suing the trustee in another court for discretionary decisions made while performing their court-derived duties. *See In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998). Another purpose of the *Barton* doctrine is to prevent "the creation of disincentives for performing a [court-appointed official's] necessary duties and keeping the [court-appointed official] from being burdened with defending against unnecessary or frivolous litigation in distant forums." *In re Ridley Owens, Inc.*, 391 B.R. 867, 871-72 (Bankr. N.D. Fla. 2008); *see also Lehal Realty Assocs. v. Scheffel*, 101 F.3d 272, 277 (2d Cir. 1996).

Extending the *Barton* doctrine to an accountant in his capacity as special master makes sense, where the duties and responsibilities were designated by the appointing court, and where the purposes underlying the doctrine also apply. In the context of a receiver, this court has recognized the doctrine, holding that "[g]enerally, a receiver cannot be sued without leave of the appointing court" when the receiver acts within "the scope of its court-derived authority." *Anes v. Crown Partnership, Inc.*, 113 Nev. 195, 200, 932 P.2d 1067, 1070 (1997). Here, Bertsch was appointed special master by the district court, and the court tasked him with investigating and preparing a preliminary and final report concerning all transactions related to cash flow, assets, and capital investments of a third-party defendant in the Vion litigation. The district court instructed that:

> The Special Master may direct any of [the third-party defendant's] current or former managers or

SUPREME COURT
OF
NEVADA

(O) 1947A

9

members to produce any business records he deems necessary to carry out his responsibilities, and shall have authority to issue subpoenas to any person or entity to obtain information which he deems relevant or necessary to perform his duties as [s]pecial [m]aster.

In executing his duties, Bertsch was required to use discretionary judgment to obtain and evaluate records related to the transactions outlined in the order. His subsequent analysis of those records in a written report consisting of findings related to the legitimacy and veracity of these business transactions was prepared to assist the district court in making determinations of law and fact. Therefore, although the district court did not adopt the final report, Bertsch was appointed as a person with expertise to evaluate and report on accounting issues to assist the district court in its neutral analysis of the legal issues presented in the case. Accordingly, we determine that Bertsch played an integral role in the judicial process and performed duties sufficiently similar to other court-appointed officials who have benefitted from the *Barton* doctrine. *See Hawaii Ventures, LLC v. Otaka, Inc.,* 164 P.3d 696, 716 (Haw. 2007) (defining the position of receiver and the duties associated therewith as beneficial to both parties and as "an officer of the court, deriv[ing] her authority wholly from the orders of the appointing court"); *Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir. 2009) (holding that "the *Barton* doctrine applies to actions against officers approved by the . . . court, when those officers function as the equivalent of court-appointed officers" (internal quotations omitted)).

We have previously recognized that "[e]xposure to liability could deter [a court-appointed professional's] acceptance of court appointments or color their recommendations." *Duff v. Lewis,* 114 Nev.

564, 568, 958 P.2d 82, 86 (1998) (internal quotations omitted). As the United States Supreme Court explained in *Butz v. Economou*, "controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with [unlawful] animus." 438 U.S. 478, 512 (1978).

Because the purposes expressed in *Barton* extend similarly to court-appointed officials such as Bertsch, we hold that the *Barton* doctrine applies to court-appointed accountants in the capacity of special master, and that an individual must seek leave of the appointing court when suing a court-appointed special master in a non-appointing court for actions taken within the scope of the court-derived authority. *See Anes*, 113 Nev. at 200, 932 P.2d at 1070.

> *The appointing court determined that Bertsch did not act outside the scope of his court-derived duties*

The district court denied Bloom's disqualification motion on May 13, 2013, and found as follows:

> Based on NCJC 2.11(C), [Bertsch] should have made a disclosure of his prior attorney-client relationship with [LSC]. The [c]ourt does not find that non-disclosure of such relationship constitutes grounds for disqualification. . . . *[Bertsch] is a fair, impartial, unbiased and highly skilled forensic accountant, and the matters in this case to which the [c]ourt made its reference are in his area of his expertise. The reference to [s]pecial [m]aster in this case was proper.*
>
> . . . .
>
> *The [district] [c]ourt finds that [Bertsch] has complied in all respects with the [order of appointment].*

(Emphasis added.)

Therefore, the district court, upon being presented with the evidence, implicitly rejected Bloom's contention and found that Bertsch had not acted beyond the scope of his court-derived duties. To the extent that Bloom's motion can be seen as seeking leave of court to sue Bertsch, the district court did not explicitly permit it.

Accordingly, Bloom must first have filed a motion with the appointing court in order to sue Bertsch personally. We, therefore, grant the petition and direct the clerk of this court to issue a writ of mandamus directing the district court to dismiss the underlying complaint against Bertsch.[2]

_____, J.
Hardesty

We concur:

_____, J.
Pickering

_____, J.
Parraguirre

---

[2]Because this issue is dispositive, we need not address the remaining issues in Bertsch's petition. Furthermore, the parties do not argue, and this court need not reach, whether the removal of the Vion litigation to the United States Bankruptcy Court for the District of Nevada, and its subsequent settlement, foreclosed further action by the parties in this case. *See Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004) (holding that the *Barton* doctrine applies even after the case closes).