**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000904
31-JAN-2022
08:14 AM
Dkt. 74 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK,
AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE CWABS, INC.,
ASSET-BACKED CERTIFICATES, SERIES 2006-15, Plaintiff-Appellee
v.
MARK L. LARRUA, AKA MARK K. LARRUA, KARLENE L. LARRUA,
Defendants-Appellees, ASSOCIATION OF APARTMENT OWNERS OF
ELIMA LANI CONDOMINIUMS, Defendant-Appellant, JOHN DOES 1-20;
JANE DOES 1-20; DOE CORPORATIONS 1-20, DOE ENTITIES 1-20;
AND DOE GOVERNMENTAL UNITS 1-20, Defendants

NO. CAAP-17-0000904
(Consolidated with NO. CAAP-18-0000571)

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CC16-1-00308K)

JANUARY 31, 2022

LEONARD, PRESIDING JUDGE, HIRAOKA AND MCCULLEN, JJ.

OPINION OF THE COURT BY LEONARD, J.

This appeal stems from the contention that an apartment owners association, after having nonjudicially foreclosed upon an assessment lien and thereby taking title to an apartment unit, has the right to maintain possession and retain rental proceeds from the unit even after a subsequent foreclosure decree and judgment has been entered against its ownership interest. For the reasons set forth below, we hold that the circuit court herein did not abuse its discretion in appointing a foreclosure commissioner to take possession and control of the subject unit upon the entry of the foreclosure decree and judgment. Under Hawaiʻi law, a judgment entered on a foreclosure decree is a final determination of a foreclosed party's ownership interests in the subject property – in other words, the property owner's ownership rights in the property are foreclosed, notwithstanding that further proceedings are necessary to enforce and otherwise effectuate the foreclosure decree and judgment. As discussed below, an association may nevertheless have the right to a special assessment against the purchaser of the foreclosed property, including when the foreclosing mortgagee is the purchaser.

In this consolidated appeal, Defendant-Appellant Association of Apartment Owners of Elima Lani Condominiums (the **AOAO**) appeals from: (1) the November 29, 2017 Judgment (**Foreclosure Judgment**) entered by the Circuit Court of the Third

Circuit (**Circuit Court**)[1] in favor of Plaintiff-Appellee The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2006-15 (**Bank of New York**); and (2) the July 5, 2018 Judgment (**Confirmation Judgment**) entered by the Circuit Court in favor of Bank of New York. The AOAO also challenges the Circuit Court's: (1) November 29, 2017 Findings of Fact, Conclusions of Law and Order Granting [Bank of New York's] Motion for Default Judgment Against Defaulted Defendants and Summary Judgment Against [the AOAO] and for Interlocutory Decree of Foreclosure (**Foreclosure Decree**); and (2) July 5, 2018 Order Confirming Foreclosure Sale, Approving Commissioner's Report, Allowance of Commissioner's Fees, Attorneys' Fees, Costs, Directing Conveyance and for Writ of Ejectment (**Confirmation Order**).

I.   BACKGROUND

On September 27, 2016, Bank of New York filed a Complaint for Mortgage Foreclosure (**Complaint**), alleging that on or about July 14, 2006, Defendants Mark L. Larrua aka Mark K. Larrua and Karlene L. Larrua (the **Former Owners**) executed a promissory note to Countrywide Home Loans, Inc., in the amount of $238,400 (**Note**), secured by a mortgage (**Mortgage**) on the subject Property (**Property**). The Complaint alleged that the Note was negotiated to Bank of New York, the Mortgage was assigned to Bank

---

[1]   The Honorable Melvin H. Fujino presided.

of New York, and the assignment was recorded on June 26, 2012. Bank of New York further alleged that it is the current holder of the Note with standing to foreclose and that it was entitled to foreclose on the basis of the Former Owners' default on the Note.[2]

The Complaint alleged that the AOAO acquired an interest in the Property by virtue of a quitclaim deed recorded on June 29, 2015, but that the AOAO's interest, if any, is subordinate, subject, and/or junior to Bank of New York's mortgage lien. Bank of New York sought, *inter alia*: (1) that upon the foreclosure sale, any ownership or lien interest claimed by any named defendant be adjudicated subordinate to the lien of Bank of New York's mortgage; and (2) the appointment of a commissioner to take possession of the Property, collect rents, and deal with and sell the Property.

In its November 15, 2016 answer to the Complaint (**Answer**), the AOAO admitted that it acquired an interest in the Property, but denied that its interest was subordinate, subject, and/or junior to Bank of New York's mortgage lien. The AOAO asserted an "Affirmative Statement of Claim," alleging that certain sums had been assessed against the Property and constituted a lien in favor of the AOAO and that the Former

---

[2] Neither defendant has challenged Bank of New York's standing to enforce the Note. See U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust v. Verhagen, 149 Hawaiʻi 315, 489 P.3d 419 (2021); Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 390 P.3d 1248 (2017).

Owners had failed to pay an amount in excess of $24,000[3] in outstanding assessments as of June 29, 2015.  The AOAO sought, *inter alia*, dismissal of the Complaint as to the AOAO and for any proceeds from the sale of the Property be distributed in accordance with Hawaii Revised Statutes (**HRS**) § 514B-146(g) and (h) (Supp. 2017).[4]

On September 7, 2017, Bank of New York filed a Motion for Summary and/or Default Judgment Against All Defendants and for Interlocutory Decree of Foreclosure (**Motion for Summary Judgment**), asserting that it had "established all the material facts to entitle it to summary judgment and a decree of

---

[3]     Specifically, the Answer asserts that the Former Owners failed to pay a total of "$24,477.36.26," so the exact amount of the alleged outstanding assessments is unclear.

[4]     HRS § 514B-146(g) and (h) (Supp. 2017), now codified as HRS § 514B-146(j) and (k) (2018), provide, in pertinent part:

> **§ 514B-146  Association fiscal matters; lien for assessments.**
> . . . .
>
> (g)  Subject to this subsection, and subsections (h) and (i), the board may specially assess the amount of the unpaid regular monthly common assessments for common expenses against a mortgagee or other purchaser who, in a judicial or nonjudicial power of sale foreclosure, purchases a delinquent unit[.]
> . . . .
>
> (h)  The amount of the special assessment assessed under subsection (g) shall not exceed the total amount of unpaid regular monthly common assessments that were assessed during the six months immediately preceding the completion of the judicial or nonjudicial power of sale foreclosure.

5

foreclosure."[5]  Bank of New York requested the Circuit Court enter an order:

> 4.  To determine that the Mortgage is a valid first lien upon the Property, except for delinquent real property taxes, if any;
>
> 5.  To ascertain the total amount due to [Bank of New York] from [the Former Owners] under the Note and Mortgage, including principal, prepayment fees, late charges, insurance advances, title reports and other costs, expenses, and attorneys' fees, and that this Court make and enter judgment as follows:
>
> . . . .
>
> > b.    That [Bank of New York]'s Mortgage is a valid first mortgage lien on the Property with priority over any other liens and encumbrances thereon, except for the lien of any delinquent real property taxes;
>
> . . . .
>
> 7.  To determine, if appropriate and necessary, the validity and amount of the claims and liens, if any, of all parties herein and the priorities of such claims and liens;
>
> 8.  To appoint a Commissioner to take possession of the Property and direct that he or she:
>
> > a.    Possess, preserve, operate and manage the Property and all businesses and enterprises conducted thereon, including, but not limited to, collecting rental payments and revenues, taking control of all accounts and receivables, and paying and discharging from such funds received all of the ordinary costs and expenses related to the operation and management of the Property; and
> >
> > b.    Sell the Property by public sale in lawful money of the United States in the manner provided by law and the orders of this Court, and upon the confirmation of said sale by this Court, that the Commissioner be authorized and directed to make and deliver to the purchaser or purchasers, or the nominee of said purchaser(s), such instrument of conveyance as may be appropriate to transfer ownership of the Property, with the issuance of a Writ of Ejectment in favor of said purchaser or purchasers, or the nominee of said purchaser(s);

---

[5]    Bank of New York previously requested, and was granted, an entry of default against the Former Owners, based on their failure to respond to the Complaint.

9.  To authorize and direct the Commissioner, after the payment of all necessary expenses of such sale, to make application of all the proceeds thereof so far as the same may be necessary to the payment of the amounts found due and owing to Plaintiff under the Note and Mortgage, including advances, title search fees, costs, expenses, and attorneys' fees, as determined by the Court;

10.  To authorize [Bank of New York] or its designee to be a purchaser at any foreclosure sale made as aforesaid, and to credit bid up to the total amount due to [Bank of New York] without the requirement of any down payment at said sale[.][6]

(Format altered).

On September 26, 2017, the AOAO filed a limited memorandum in opposition to the Motion for Summary Judgment. The AOAO did not oppose Bank of New York's request to foreclose on the Mortgage, as a first priority lien against the Property. Rather, the AOAO opposed any relief whereby a foreclosure commissioner would take possession of or collect rental proceeds from the Property, and the AOAO requested that the Circuit Court reserve its ruling on the AOAO's right to collect a special assessment until the hearing on a motion to confirm sale. The AOAO asserted that it became the rightful owner on June 29, 2015, upon completion of a nonjudicial foreclosure of its assessment lien on the Property, and that HRS § 667-102(b)(4) (2016)[7]

---

[6]   Bank of New York did not seek a deficiency judgment against the Former Owners.

[7]   HRS § 667-102(b)(4) states:

§ 667-102  Recordation of affidavit, conveyance document; effect.  (a) The affidavit required under section 667-101 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not later than forty-five days after the public sale is held.
. . . . .

(continued...)

conferred the AOAO with immediate and exclusive possession of the unit, thereby "effectuat[ing] a bar against any person claiming a right or interest in title."  The AOAO argued that it should be allowed to continue to maintain possession of the Property, manage and preserve the Property, and, if appropriate, continue to rent the Property until a sale of Property was confirmed, rather than when the Foreclosure Decree was entered.

The AOAO also cited HRS § 514B-146(k) (Supp. 2017)[8] as

---

[7](...continued)
> (b)     When both the [section 667-101] affidavit and
>         the conveyance document are recorded:
>         . . . .
>
> (4)     The purchaser shall be entitled to immediate and
>         exclusive possession of the unit.

[8]      HRS § 514B-146(k) (Supp. 2017), now codified at HRS § 514B-146(n) (2018), states:

> **§ 514B-146  Association fiscal matters; lien for assessments.**
>         . . . .
>
> (k)  After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner.  For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for:
> (1)     The lien for delinquent assessments pursuant to subsections (a) and (b);
> (2)     Any maintenance fee delinquency against the unit;
> (3)     Attorney's fees and other collection costs related to the association's foreclosure of the unit; or
> (4)     Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees,
> (continued...)

"clearly contemplat[ing]" the AOAO's continued possession and rental of the Property until completion of the Bank of New York's foreclosure action.  Specifically, the AOAO asserted that the plain and unambiguous language of the statute requires an AOAO to pay to lienholders any excess rental income it receives after the issuance of a final judgment determining the priority of a senior mortgagee.  The AOAO also stated that it continues to incur monthly expenses related to the operation and maintenance of the Property and argued that "[i]t would be inequitable and in violation of the plain language of HRS § 514B-146(k) to allow the lender to take advantage of [the AOAO]'s efforts and expenses, by appointing a commissioner to take possession of accounts and receivables that [the AOAO] has spent funds to generate, and hold or use them for [Bank of New York]'s benefit."

Finally, the AOAO argued that unless and until Bank of New York acquires title to the Property, Bank of New York is not entitled to an order granting it the benefits of ownership through the efforts of a commissioner.  The AOAO urged the Circuit Court to enter an appropriate order, allowing a commissioner to proceed without interfering with the AOAO's interests.

---

[8](...continued)
                real estate commissions, cleaning and repair
                expenses for the unit, and general excise taxes
                paid on rental income;
        provided that the lien for delinquent assessments under
        paragraph (1) shall be paid, credited, or reimbursed first.

In reply, Bank of New York took no position in regard to the AOAO's continued possession, management, and rental of the property, but requested that any argument as to the distribution of the rental proceeds collected by the AOAO and as to the AOAO's special assessment lien be reserved until the hearing to confirm the sale of the foreclosed property. Bank of New York also requested the AOAO be ordered to file an accounting prior to such hearing, setting forth all rent collected in regard to the Property from June 29, 2015, the date that the AOAO took title to the Property, to the date of the confirmation of the sale of the Property.

At the October 5, 2017 hearing on the Motion for Summary Judgment, the parties reiterated their positions with respect to the commissioner's proposed duties. Bank of New York also requested a "full accounting" so it could analyze whether the AOAO is entitled to any of the amounts it collected. The AOAO countered that, pursuant to HRS § 514B-146(k), "the accounting should only start as of the entry of a judgment determining the priority of a senior mortgagee" and not from the date the AOAO became the owner in 2015.

The Circuit Court indicated it would grant Bank of New York's Motion for Summary Judgment and stated:

> [T]he Court's inclined regarding the, uh, information would be from the time the rents were collected would be appropriate for the, uh, plaintiff to have information in that, not just when the Court orders it.
>
> Uh, furthermore after . . . the Court having granted the motion for interlocutory decree would also, um, position

would be that the rent collected will be turned over to the commissioner.

On November 29, 2017, the Circuit Court entered the Foreclosure Decree and Foreclosure Judgment and concluded in part:

> [COL] 2.  [Bank of New York]'s Mortgage is a valid mortgage lien on the Property.
>
> . . . .
>
> [COL] 7.  [Bank of New York] is entitled to the entry of default judgment against [the Former Owners] and summary judgment against Defendant AOAO and an interlocutory decree of foreclosure against all Defendants in the foreclosure action.

In the Foreclosure Decree, the Circuit Court ordered, *inter alia*:

> [FOF] 16.  Defendant AOAO may continue collecting rental proceeds from the Property until the Commissioner is appointed herein.  Upon appointment of Commissioner, Commissioner shall collect the rental proceeds, the distribution of proceeds (if any) shall be determined at the confirmation hearing.
>
> . . . .
>
> 1. . . . . Summary judgment and an interlocutory decree of foreclosure in favor of [Bank of New York] against Defendant AOAO is hereby entered.
>
> . . . .
>
> 5.  David E. Smith, Esq. [(the **Commissioner**)], is hereby appointed Commissioner of this Court in this action, . . . and as Commissioner, is authorized and directed to take possession and control of the Property, including but not limited to collecting rental payments and to sell the Property at a public auction[.]. . .  A reasonable Commissioner's fees and costs shall be submitted to and awarded accordingly by the court, and shall be deemed to be secured by the Mortgage.
>
> . . . .
>
> 7.  Upon confirmation of the sale, the Commissioner is authorized and directed, after the payment of all necessary expenses of such sale, to make application of all the proceeds thereof and all funds which they hold in their capacity as Commissioner so far as the same may be necessary to the payment of amounts found due and owing to [Bank of New York] from the [Former Owners] under the Loan Documents,

> including advances, title search fees, costs, expenses, and attorney's fees, as determined by this court.
>
> 8. [Bank of New York], or its designee, is authorized to be a purchaser at any sale, without the requirement of any down payment at said sale. . . .
>
> . . . .
>
> 11. Any and all interest of all named Defendants that is junior to Plaintiff's interest is hereby terminated upon conveyance of the deed to the confirmed purchaser.
>
> . . . .
>
> 14. This Court retains jurisdiction to ascertain the total amount that is due and owing to [Bank of New York], consisting of the principal amount due under the Loan Documents, together with interest, advances, late charges, expenses, costs, and attorney's fees thereon to the date of conveyance of the Property by the Commissioner.
>
> . . . .
>
> 16. This Court further retains jurisdiction to determine among other matters which may later come before this Court, damages awarded to [Bank of New York], the amount of fees and costs of the Commissioner and [Bank of New York]'s attorneys and over any party to whom any surplus shall be awarded.

On December 20, 2017, the AOAO timely filed a notice of appeal from the Foreclosure Decree and Foreclosure Judgment, initiating CAAP-17-0000904.

On December 22, 2017, the AOAO filed a Motion for a Stay Pending Appeal and To Set Supersedeas Bond (**Motion for Stay**). Following a January 26, 2018 hearing, the Circuit Court entered a March 6, 2018 Order Granting in Part and Denying in Part the [Motion for Stay]. The Circuit Court ordered as follows, in part:

> 2. The Motion is granted to the extent that the enforcement of the portions of the [Foreclosure Decree] and the corresponding [Foreclosure Judgment] that authorize the Commissioner to take possession and control of and collect rental payments from [the Property] is hereby stayed pending [the AOAO]'s appeal of the same. The remainder of the

[Foreclosure Decree] and [Foreclosure Judgment] are not subject to the stay provided for herein.

    3. [The AOAO] shall be entitled to retain possession and control of the Property and shall be entitled to collect rental payments from the Property until such time as the Property is conveyed to a purchaser in this foreclosure action. During this time, the Commissioner is not authorized to take possession of the Property, and is not authorized to collect monthly rental payments from the Property. That notwithstanding the stay the Commissioner is entitled to proceed with scheduling and conducting the two open houses, publishing a foreclosure notice, conducting the foreclosure auction and conveying the Property to the successful bidder, all as had been previously ordered by this Court.

    4. The Motion is DENIED with respect to [the AOAO]'s request to post alternative security, in lieu of a supersedeas bond, in the form of monthly rental payments into a Court-supervised rent trust account during the period following the issuance of the Order to the conveyance of the Property to a purchaser in this foreclosure action. Instead, the supersedeas bond amount shall be $45,000.00, which is equivalent to 36 months of $1,250.00 monthly rental payments.

The AOAO filed a Motion for Reconsideration of the Circuit Court's order, which Bank of New York opposed and the Circuit Court denied. The AOAO did not post a supersedeas bond.

On March 28, 2018, the Commissioner filed his report, stating, *inter alia*, that Bank of New York had bid highest at the foreclosure auction. The Commissioner submitted an explanation of fees and costs totaling $6,584.81 and requested:

    A. That the Court approve your Commissioner's Report.

    B. That a hearing be held to confirm the sale of the subject property to [Bank of New York], for the sales price of $188,112.75.

    C. That the Court allow your Commissioner reimbursement of expenses incurred and award Commissioner's fees in an amount to be determined by the Court upon the confirmation hearing and finally approved by the Commissioner's Final Accounting.

    D. That upon your Commissioner conveying the subject property to the party to whom the sale thereof is confirmed, distributing the funds, if any, to those persons and parties in the amounts and in the order of priority directed by this

> Court, and your Commissioner filing his distribution
> statement, attaching receipts, if any, of these amounts from
> these persons or parties who are entitled to receive such
> amounts, your Commissioner stand discharged from any further
> responsibility and liability.

The AOAO did not object to the Commissioner's Report.

On April 16, 2018, Bank of New York filed its Motion for Order Confirming Foreclosure Sale, Approving Commissioner's Report, Allowance of Commissioner's Fees, Attorneys' Fees, Costs, Directing Conveyance and for Writ of Ejectment (**Confirmation Motion**). Bank of New York requested that the Circuit Court order, *inter alia*:

> 7.   That this Court direct the Commissioner or escrow
> agent to disburse the fees, expenses and costs approved by
> this Court upon the conveyance of the Property herein
> authorized and the total purchase price of $188,112.75 shall
> be disbursed as follows:
>
> > a.   First, to the Commissioner, the net sum of
> > $6,584.81;
> >
> > b.   Second, to [Bank of New York], the total amounts
> > owed as of the date of closing, including all
> > attorneys' fees and costs awarded, in accordance
> > with bank wiring and other written instructions
> > provided by TMLF Hawaii, LLLC to the
> > Commissioner or escrow, as appropriate; and
> >
> > c.   In the event there are any remaining funds after
> > [Bank of New York] has been paid, said funds
> > shall be deposited with the Clerk of Court.
>
> . . . .
>
> 9.   That all named Defendants junior to [Bank of New
> York]'s interest shall be terminated from right, title, and
> interest in the Property.
>
> 10.   That rent on the Property collected by the
> Commissioner, if any, shall be paid to [Bank of New York]
> and forwarded in care of [Bank of New York]'s attorneys,
> which sum shall be credited against the amounts due [Bank of
> New York] under its Note and Mortgage.

Opposing in part the Confirmation Motion, the AOAO asserted its "statutory right to collect a special assessment on

14

the [Property]" and requested the Circuit Court "give priority to the [AOAO]'s statutory lien on the Property, permitting the [AOAO] to collect the six-month special assessment" pursuant to HRS § 514B-146(g) and (h) (Supp. 2017).[9]  The AOAO also opposed the request for any rent collected by the Commissioner be paid to Bank of New York, again citing HRS § 514B-146(k) (Supp. 2017) and HRS § 667-102(b)(4).  Finally, the AOAO opposed Bank of New York's request for attorneys' fees as unreasonably high and not reflecting time actually spent on the matter.

At a May 16, 2018 hearing on the Confirmation Motion, Bank of New York did not object to the Association's six-month special assessment.  The Commissioner noted that the Property was currently occupied by tenants but that, to date, the Commissioner had not collected any rent because it had been paid to the AOAO. The Circuit Court orally ruled that the rent collected by the AOAO from the time the Plaintiff took possession "shall be turned over to the Plaintiff, however the Court will find that the six months special assessment fee will apply in this case, but not in excess of that special assessment.  The rest of the rent should be turned over to the Plaintiff."

On July 5, 2018, the Circuit Court entered the Confirmation Order.  The Circuit Court ordered, *inter alia*:

---

[9]     The AOAO acknowledged that HRS § 667-102(b)(3) extinguished "the lien it foreclosed on in its nonjudicial foreclosure" but argued that the Property remained a "delinquent unit" for purposes of the special assessment statute.

2. That the Commissioner's Report filed herein is hereby ratified, approved and confirmed.

3. That the sale of the Property to [Bank of New York] at the sale price of $188,112.75 is ratified, approved and confirmed.

4. That upon receipt of the full purchase price, Commissioner is hereby ordered and directed to make a conveyance of the title to the Property to [Bank of New York].

. . . .

9. That upon the conveyance of the Property herein authorized, the total purchase price of $188,112.75 shall be disbursed as follows:

a. First, to the Commissioner, the net sum of $6,584.81.

b. Second, to [Bank of New York], the total amounts owed as of the date of closing, including all attorneys' costs awarded herein, in accordance with bank wiring and other written instructions provided by TMLF Hawaii LLLC to the Commissioner or escrow, as appropriate; and

10. That rent on the Property collected by the Commissioner, if any, shall be paid to [Bank of New York] and forwarded in care of [Bank of New York]'s attorneys.

. . . .

12. That all named Defendants that are junior to Plaintiff's interest shall be terminated from any right, title, and interest in the Property.

. . . .

17. Defendant [AOAO]'s request for six months special assessment pursuant to [HRS] § 514B-146(g) and (h) is granted.

The Circuit Court also entered the Confirmation Judgment on July 5, 2018. On July 18, 2018, the AOAO timely filed a notice of appeal from the Confirmation Order and Judgment, initiating CAAP-18-0000571.

On April 24, 2019, this court consolidated the two appeals under CAAP-17-0000904.

16

II.  POINTS OF ERROR

The AOAO raises three points of error.  In CAAP-17-0000904, challenging the *Foreclosure Decree*, the AOAO contends that the Circuit Court erred in:  (1) ordering the Commissioner to take possession and control of the Property owned by the AOAO, including collecting rental payments; and (2) ordering the Commissioner to pay Bank of New York all of the rental income collected from the Property.  In CAAP-18-0000571, challenging the *Confirmation Order*, the AOAO contends the Circuit Court erred in ordering the Commissioner to pay Bank of New York "all of the rental income collected from the Property."  Although not identified as a point of error, in the appeal from the Confirmation Order, the AOAO also argues the Circuit Court erred when it purportedly vested the Commissioner with title to the Property.

III. APPLICABLE STANDARDS OF REVIEW

This court "review[s] an award of summary judgment *de novo* under the same standard applied by the circuit court."  HSBC Bank USA, Nat'l Ass'n v. Moore, 144 Hawaiʻi 49, 53, 434 P.3d 1244, 1248 (App. 2018) (quoting Salera v. Caldwell, 137 Hawaiʻi 409, 415, 375 P.3d 188, 194 (2016)).  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

17

as a matter of law."  Id. (quoting Caldwell, 137 Hawaiʻi at 415, 375 P.3d at 194).  "The court views all the evidence and inferences in the light most favorable to the party opposing the motion."  Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 367 n.9, 390 P.3d 1248, 1254 n.9 (2017) (citation omitted).  "The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact with respect to the essential elements of the claim[.]"  Id. (citation omitted).

The interpretation of a statute is a question of law which the appellate court reviews *de novo*.  Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch, 148 Hawaiʻi 1, 5, 466 P.3d 399, 403 (2020); Mount v. Apao, 139 Hawaiʻi 167, 174-75, 384 P.3d 1268, 1275-76 (2016).  "Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning."  Apao, 139 Hawaiʻi at 175, 384 P.3d at 1276 (citing Sierra Club v. Dep't of Transp., 120 Hawaiʻi 181, 197, 202 P.3d 1226, 1242 (2009)).

"Foreclosure is an equitable action" and "[c]ourts of equity have the power to mold their decrees to conserve the equities of the parties under the circumstances of the case."  Peak Capital Grp., LLC v. Perez, 141 Hawaiʻi 160, 172, 407 P.3d 116, 128 (2017) (citing Hawaiʻi Nat'l Bank v. Cook, 100 Hawaiʻi 2, 7, 58 P.3d 60, 65 (2002) (**Hawaiʻi Nat'l Bank II**); Honolulu, Ltd. v. Blackwell, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (1988)).  "Whether and to what extent relief should be granted rests within

the sound discretion of the court and will not be disturbed absent an abuse of such discretion." Id. (citing Jenkins v. Wise, 58 Haw. 592, 598, 574 P.2d 1337, 1342 (1978)).

"The lower court's authority to confirm a judicial sale is a matter of equitable discretion." Hoge v. Kane II, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (1983) (citing Wodehouse v. Hawaiian Trust Co., Ltd., 32 Haw. 835, 852 (1933)). "Hence, [t]he exercise of discretion by the lower court judge will not be disturbed on appeal except for abuse." Indus. Mortg. Co., L.P. v. Smith, 94 Hawaiʻi 502, 510, 17 P.3d 851, 859 (App. 2001) (quoting Brent v. Staveris Dev. Corp., 7 Haw. App. 40, 45, 741 P.2d 722, 726 (1987)) (internal quotation marks omitted).

IV.  DISCUSSION

A.  The Commissioner's Possession of the Property

The AOAO contends that the Circuit Court erred in ordering the Commissioner to take possession and control of the Property "despite the [AOAO]'s statutory right to exclusive possession of the Property." The AOAO argues that the Commissioner's possession of the Property runs afoul of HRS § 667-102(b)(4) (2016) and the AOAO's entitlement to exclusive possession of the Property upon completion of its nonjudicial foreclosure in 2015.

HRS § 667-102 provides, in pertinent part:

> **§ 667-102  Recordation of affidavit, conveyance document; effect.**  (a) The affidavit required under section 667-101 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not

> later than forty-five days after the public sale is
> held. . . .
>> (b)  **When both the affidavit and the conveyance**
> **document are recorded**:
>>> (1)    The sale of the unit is considered completed;
>>> (2)    All persons claiming by, through, or under the
>>> unit owner and all other persons having liens on
>>> the unit junior to the lien of the association
>>> shall be forever barred of and from any and all
>>> right, title, interest, and claims at law or in
>>> equity in and to the unit and every part of the
>>> unit, except as otherwise provided by law;
>>> (3)    The lien of the association and all liens junior
>>> in priority to the lien of an association shall
>>> be automatically extinguished from the unit; and
>>> (4)    **The purchaser shall be entitled to immediate and**
>>> **exclusive possession of the unit**.

(Emphasis added).

In conjunction with its nonjudicial foreclosure of its lien, HRS § 667-102(b)(4) provided the AOAO with immediate and exclusive possession of the unit upon the recordation of both the affidavit and the conveyance document.

Nonetheless, nothing in HRS § 667-102 precludes the appointment of a Commissioner to possess and control the Property upon a pre-existing mortgagee's subsequent judicial foreclosure of the Property.  "Real property is transferable even though the title is subject to a mortgage or deed of trust, but the transfer will not eliminate the existence of that encumbrance."  55 Am. Jur. 2d <u>Mortgages</u> § 954, Westlaw (database updated November 2021); <u>see</u> <u>also</u> <u>OneWest Bank, F.S.B. v. Ass'n of Owners of Kumulani at Uplands at Mauna Kea</u>, 146 Hawaiʻi 105, 108, 456 P.3d 178, 181 (2020) (noting lower court "appointed a commissioner to take possession of the property and to sell it").  Moreover,

> [i]f the real property is sold subject to an existing
> mortgage, the buyer acquires the property burdened with that
> mortgage, and if the buyer does not also assume mortgage, it

> takes the land subject to encumbrances without a personal
> obligation to pay the debt.  However, the buyer may lose the
> property if the mortgage debt is not paid, because the
> seller, the mortgagor, is not required to use funds paid to
> it for the payment of the mortgage, and the property becomes
> a source of repayment for the debt.

55 Am. Jur. 2d Mortgages § 957, Westlaw (database updated November 2021).

Here, the AOAO's Quitclaim Deed stated that the AOAO took title of the Property "subject . . . to all encumbrances of record" – specifically the Bank of New York Mortgage – a fact that the AOAO did not and does not challenge.  In accordance with the terms of the Mortgage, based upon the Former Owners' default, Bank of New York initiated foreclosure proceedings and, based upon the evidence presented in conjunction with the Motion for Summary Judgment, the Circuit Court granted the motion and entered the Foreclosure Decree and Foreclosure Judgment.

It is important to note that under Hawaiʻi law, it is well-established that a judgment entered on a foreclosure decree is a final determination of the parties' rights in the subject property – in other words, the property owners' rights in the property are foreclosed, notwithstanding that further proceedings are necessary to enforce and otherwise effectuate the foreclosure decree and judgment.  The Hawaiʻi Supreme Court has articulated this tenet as follows:

> A judgment of foreclosure of mortgage or other lien and sale
> of foreclosed property is final, although it contains a
> direction to commissioners to make a report of sale and to
> bring the proceeds into court for an order regarding their
> disposition.  This is on the ground that such judgment
> finally determines the merits of the controversy, and

> subsequent proceedings are simply incidents to its enforcement.

MDG Supply, Inc. v. Diversified Invs., Inc., 51 Haw. 375, 380, 463 P.2d 525, 528 (1969) (citations omitted).

Accordingly, in this case, the Foreclosure Decree and Foreclosure Judgment foreclosed the AOAO's ownership interest in the Property, even though legal title would not pass until the sale of foreclosed property was complete. In addition, since "[f]oreclosure is an equitable action," the Circuit Court "has the plenary power to fashion a decree to conform to the equitable requirements of the situation." Peak Capital Grp., LLC, 141 Hawai'i at 172, 407 P.3d at 128 (citing Jenkins, 58 Haw. at 598, 574 P.2d at 1342); see also OneWest Bank, 146 Hawai'i at 112, 456 P.3d at 185 ("In a judicial foreclosure action, the circuit court has broad discretion to order execution on its own judgments."). This court has summarized that:

> As a practical matter, **the court must exercise its equitable powers, pending final resolution of a foreclosure, through its appointed commissioner**.
>
> It is well settled that a commissioner is a neutral party appointed by the court and acts as an arm of the court. We have stated that "the commissioner is an agent acting in the court's behalf[.]" Hoge v. Kane, 4 Haw. App. 533, 539, 670 P.2d 36, 40 (1983).
>
> As a neutral party, the commissioner does not act at the behest of the mortgagee, the mortgagor or any other interested party. See 4 Powell on Real Property § 37.26[3][b] at 174 ("The receiver is an officer of the court. He must account to the court and act at the direction of the court."); Federal Home Loan Mortg. Corp. v. Spark Tarrytown, Inc., 829 F. Supp. 82, n.6 (S.D.N.Y. 1993) ("A receiver is not the agent of the mortgagee, or the party who sought his appointment, but is solely an arm of the court.").
>
>       . . . .

> Furthermore, the commissioner takes possession of the mortgaged property and preserves the property for the benefit of the person or entity subsequently entitled to it. See 1 Real Estate Finance Law, § 4.33 at 235 (stating that a receiver takes "possession of the mortgaged property to repair or preserve the property and to collect rents"), Anes v. Crown Partnership, 932 P.2d 1067, 1069, 113 Nev. 195, 199 (1997) ("Customarily, a receiver is a neutral party appointed by the court to take possession of property and preserve its value for the benefit of the person or entity subsequently determined to be entitled to the property.").

Hawaiʻi Nat'l Bank v. Cook, 99 Hawaiʻi 334, 346-47, 55 P.3d 827, 839-40 (App. 2000) (**Hawaiʻi Nat'l Bank I**) (emphasis added), rev'd on other grounds by Hawaii Nat'l Bank II, 100 Hawaiʻi 2, 58 P.3d 60.[10]  In sum, "[b]ecause it is not practical for the court to do the physical work in connection with taking the possession [of] and preserving the property, the court appoints its officer or receiver to act."  Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 458, 164 P.3d 696, 716 (2007) (quoting 2 Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers § 384, at 645 (3d ed. 1959)) (internal quotation marks omitted).

Here, the Circuit Court appointed the Commissioner, authorizing and directing him to, *inter alia*, take possession and control of the Property and ensure the sale of the Property at a

---

[10]   In Hawaii Nat'l Bank I, the Intermediate Court of Appeals (**ICA**) addressed whether a landlord of a commercial property (**Bishop Estate**) was entitled to subtenant rents collected by a Commissioner during a foreclosure proceeding, despite a valid assignment of rents clause in favor of the foreclosing mortgagee.  99 Hawaiʻi at 342, 55 P.3d at 835.  The ICA held that the Commissioner's "duty to preserve the mortgaged property . . . encompassed the obligation to pay the ground rent to Bishop Estate in order to preserve the ground leases."  Id. at 348, 55 P.3d at 841.  On *certiorari*, the supreme court vacated the ICA's holding, relying on the "imminent expiration of the lease terms."  Hawaiʻi Nat'l Bank II, 100 Hawaiʻi at 12, 58 P.3d at 70.  The supreme court concluded that insofar as the leases were not commercially marketable, the equitable "duty to preserve the property did not apply."  Id.  The supreme court did not abrogate or otherwise address the ICA's discussion of the role of a foreclosure commissioner.

public auction, subject to confirmation by the Circuit Court. This is consistent with the Circuit Court's equitable powers and standard practice to utilize a foreclosure commissioner to facilitate a foreclosure sale and ensure preservation of the Property for the subsequent purchaser, after the entry of the foreclosure decree and judgment. See Hawaii Nat'l Bank I, 99 Hawaiʻi at 346-47, 55 P.3d at 840-41; Peak Capital Group, LLC, 141 Hawaiʻi at 166, 407 P.3d at 122 (appointing commissioner to sell property at public auction); Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 66 ("The practice in the administration of estates by receivers **or by other similar officers appointed by the court** shall be in accordance with the practice heretofore followed.") (emphasis added). The Commissioner's possession and control of the Property is concomitant with the fulfillment of his equitable duty to preserve the Property and to execute the court's orders. Denying possession and control to an entity whose rights in the property have been foreclosed, with no duty – and, perhaps, no incentive – to facilitate a timely foreclosure sale (in this case, the AOAO) is not inequitable.

The AOAO nevertheless argues that "a mortgagee does not acquire title – and therefore . . . should not be entitled to the benefits of property – until a foreclosure sale is completed as defined by HRS § 514B-146(b)." The AOAO cites the "lien theory"

of mortgages,[11] asserting that it was "the holder of both legal and equitable title to the Property when the court issued the [Foreclosure Decree] directing the Commissioner to take possession of the Property" and that, since Bank of New York was not the owner of the Property, it was "not entitled to an order granting it the benefits of ownership of the [AOAO]'s efforts through a commissioner" and "had no legal basis to assert a right to possession" of the Property.  As set forth above, however, the Commissioner is a neutral party acting for the court, not the mortgagee, upon the court's entry of the foreclosure decree and judgment.

We nevertheless have considered the statute relied on by the AOAO.  In pertinent part, HRS § 514B-146(b) (Supp. 2017) provided:

> **§ 514B-146  Association fiscal matters; lien for assessments.**
> . . . .
>
> (b) Except as provided in subsection (g), when the mortgagee of a mortgage of record or other purchaser of a unit obtains title to the unit as a result of foreclosure of the mortgage, the acquirer of title and the acquirer's successors and assigns shall not be liable for the share of the common expenses or assessments by the association chargeable to the unit that became due prior to the acquisition of title to the unit by the acquirer.  The unpaid share of common expenses or assessments shall be deemed to be common expenses collectible from all of the unit owners, including the acquirer and the acquirer's successors and assigns.  **The mortgagee of record or other purchaser of the unit shall be deemed to acquire title** and shall be required to pay the unit's share of common expenses and assessments **beginning**:

---

[11]    See HRS § 506-1(a) (2018) ("Every transfer of an interest in real property or fixtures made as security for the performance of another act or subject to defeasance upon the payment of an obligation, . . . is to be deemed a mortgage and shall create a lien only as security for the obligation and shall not be deemed to pass title.").

> (1)    Thirty-six days after the order confirming the sale to the purchaser has been filed with the court;
> (2)    Sixty days after the hearing at which the court grants the motion to confirm the sale to the purchaser;
> (3)    Thirty days after the public sale in a nonjudicial power of sale foreclosure conducted pursuant to chapter 667; or
> (4)    Upon the recording of the instrument of conveyance;
> **whichever occurs first**[.][12]

(Emphasis added).

We conclude that HRS § 514B-146(b) plainly and simply establishes precisely when a mortgagee, or other purchaser who takes title to a unit after a mortgage foreclosure, must begin paying the common expenses and assessments for the unit. See First Hawaiian Bank v. Ass'n of Apartment Owners of Sun Rise, Inc., CAAP-16-0000430, 2019 WL 3764659, *3-4 (Haw. App. Aug. 9, 2019) (SDO) (analyzing when the purchasing mortgagee in that case was deemed to have acquired title under HRS § 514B-146(b) following entry of the order confirming sale). HRS § 514B-146(b) does not address the propriety of appointing a commissioner to take possession of the property and facilitate the foreclosure sale process, after the determination in the foreclosure decree that the rights of the owner(s) and any junior lienors are foreclosed. As such, nothing in the Circuit Court's order is contrary to HRS § 514B-146(b).

---

[12]    HRS § 514B-146(b) was amended in 2018 with respect to its reference to former subsection (g), which had been recodified as subsection (j). 2018 Haw. Sess. Laws Act 195, § 4 at 669-70. Otherwise, the text of HRS § 514B-146(b) relevant to this appeal was unaltered by the 2018 amendments.

The AOAO also asserts that because HRS § 514B-146(k) (Supp. 2017) "contemplates" the AOAO receiving rental income from the Property following the entry of a foreclosure decree, the AOAO "should have been allowed to continue to maintain possession of the Property" from the date of the Foreclosure Decree until completion of the foreclosure sale, as such completion is defined in HRS § 514B-146.[13]

HRS § 514B-146(k) (Supp. 2017) provided:[14]

> **§ 514B-146  Association fiscal matters; lien for assessments.**
> . . . .
>
> (k)  After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner.  For purposes of this subsection, **excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for**:

---

[13]     With respect to a judicial foreclosure, unless the context requires otherwise, for the purposes of subsections (j) and (k) of HRS § 514B-46, completion means "when a purchaser is deemed to acquire title pursuant to subsection (b)."  HRS § 514B-146 (i)(2) (Supp. 2017).

[14]     In 2018, HRS § 514B-146(k) was recodified as 514B-146(n).  2018 Haw. Sess. Laws Act 195, § 4 at 672.  For purposes of clarity and consistency, this discussion refers to subsection (k).  In amending HRS § 514B-146 in 2018, the legislature intended to "clarif[y] the procedures for disputing common expense assessments and disputing penalties or fines, late fees, legal fees, lien filing fees, or other charges."  Conf. Comm. Rep. No. 41-18, 2018 House Journal at 1456, 2018 Senate Journal at 734.  These changes are primarily found in HRS § 514B-146(d) and (g) (2018), which address applicable procedures and obligations between a unit owner and an association when a dispute arises over certain fees or common expense assessments.  See 2018 Haw. Sess. Laws Act 195, § 4 at 670-71.

(1)    The lien for delinquent assessments pursuant to subsections (a) and (b);[15]

(2)    Any maintenance fee delinquency against the unit;

(3)    Attorney's fees and other collection costs related to the association's foreclosure of the unit; or

(4)    Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees, real estate commissions, cleaning and repair expenses for the unit, and general excise taxes paid on rental income;

provided that the lien for delinquent assessments under paragraph (1) shall be paid, credited, or reimbursed first.

(Emphasis added).

This court has discussed HRS § 514B-146(k) (Supp. 2017) with respect to whether the "lien" referred to in HRS § 514B-146(k)(1) remains on a unit following the completion of an AOAO's nonjudicial foreclosure. See Am. Savs. Bank, F.S.B. v. Ass'n of Apartment Owners of the Hanohano Hale, CAAP-15-0000689, 2019 WL 968641, *4 (Haw. App. Feb. 28, 2019) (mem. op.) (**Hanohano Hale**); Hawaiʻi Central Fed. Credit Union v. Larson, CAAP-17-0000902, 2019 WL 1397391, *2 (Haw. App. March 28, 2019) (SDO) (relying on

---

[15]    HRS § 514B-146(a) (Supp. 2017) provided, in relevant part:

> **§ 514B-146 Association fiscal matters; lien for assessments.** (a) All sums assessed by the association but unpaid for the share of the common expenses chargeable to any unit shall constitute a lien on the unit with priority over all other liens, except:
> (1)    Liens for real property taxes and assessments lawfully imposed by governmental authority against the unit; and
> (2)    Except as provided in subsection (g), all sums unpaid on any mortgage of record that was recorded prior to the recordation of a notice of a lien by the association, and costs and expenses including attorneys' fees provided in such mortgages[.]

Subsection (g) referred to the special assessment now set forth in subjection (j). 2018 Haw. Sess. Laws Act 195, § 4 at 671.

<u>Hanohano Hale</u>).  In <u>Hanohano Hale</u>, we summarized the facts pertaining to the AOAO therein's nonjudicial foreclosure of its assessment lien and concluded as follows:

> [T]he AOAO had an automatic statutory lien on the Property that arose pursuant to HRS § 514B-146(a) for unpaid assessments.  The AOAO properly filed the lien in the Land Court on April 3, 2014.  Pursuant to HRS § 514B-146(a), the AOAO then elected to pursue nonjudicial foreclosure proceedings following the procedures set forth in HRS §§ 667-91 through 667-104 (2016).  HRS § 667-102(b)(3) (2016) provides that, after the affidavit and conveyance document for a nonjudicial foreclosure are recorded, "[t]he lien of the association . . . shall be automatically extinguished from the unit[.]"  Based on the plain language of HRS § 667-102(b)(3), **the AOAO's election to pursue nonjudicial foreclosure proceedings therefore extinguished its statutory lien** for the delinquent assessments.  <u>See</u> <u>First Ins. Co. of Hawaii v. A&B Props.</u>, 126 Hawaiʻi 406, 414, 271 P.3d 1165, 1173 (2012) ("[T]he fundamental starting point for statutory-interpretation is the language of the statute itself." (Citation omitted)).
>
> However, citing to HRS § 667-103 (2016), the AOAO argues that the Property was still delinquent because the AOAO did not recover the full amount of the delinquency at the nonjudicial foreclosure sale.  We do not agree with the AOAO's interpretation of HRS § 667-103.  Rather, **we conclude that HRS § 667-103 relates to the debt personal to the unit owners, unattached to the Property, if the debt is not fully satisfied.**  This, however, does not affect our conclusion that the AOAO's lien on the Property for unpaid assessments had been extinguished, pursuant to HRS § 667-102(b)(3).  In other words, the prior owner's debt to the AOAO could remain but the Property itself was no longer subject to a lien in favor of the AOAO.
>         . . . .
>
> [R]eading HRS § 514B-146(k)(1) *in pari materia* with HRS § 667-102(b)(3)—which expressly extinguished the lien of the AOAO—we construe HRS § 514B-146(k)(1) as referring to the amount owed for the delinquent assessments that triggered the lien in the first place.  In other words, **HRS § 514B-146(k) addresses how an association should deal with "excess rental income" after a foreclosure proceeding in which the association acquires title to a unit, and the statute provides for determining excess rental income as net income received by the association after, *inter alia*, paying, crediting, or reimbursing the association for amounts owed for delinquent assessments**.  Although subsection (k)(1) refers to "[t]he lien[,]" we do not read that language as intending that a lien continues to exist given the contrary and more specific language in HRS § 667-102(b)(3) providing that "[w]hen both the affidavit and the conveyance documents are recorded: . . . [t]he lien of the

> association . . . shall be automatically extinguished from
> the unit[.]"

Id. at *3-*4 (footnotes omitted) (emphasis added).

In short, as this court concluded in Hanohano Hale, once an AOAO has completed its nonjudicial foreclosure, its assessment lien on the unit is extinguished and "the amount owed for the delinquent assessments that triggered the lien in the first place" are merely a personal debt owed by the former unit owner. Id. at *4. HRS § 514B-146(k) therefore addresses only how an AOAO must utilize any rental income it receives after its own foreclosure on the unit, when its interest is subsequently foreclosed upon by a mortgagee, instructing it to pay amounts for delinquent assessments that might remain outstanding against the unit owner, maintenance fee delinquencies, fees and costs related to the AOAO's foreclosure, and any costs incurred by the association while in possession of the unit. The statute does not, however, necessarily entitle an AOAO to receive such rental income from a unit following the subsequent entry of a foreclosure decree and judgment in favor of a mortgagee.

The legislative history of HRS § 514B-146(k) (Supp. 2017) supports this interpretation. Cf. State v. Entrekin, 98 Hawaiʻi 221, 227, 47 P.3d 336, 342 (2002) ("Although we ground our holding in the statute's plain language, we nonetheless note that its legislative history confirms our view.") (citing Crichfield v. Grand Wailea Co., 93 Hawaiʻi 477, 488-89, 6 P.3d 349, 360-61 (2000); State v. Ramela, 77 Hawaiʻi 394, 396 n.3, 885

P.2d 1135, 1137 n.3 (1994)).  The stated purpose of the statute
is to "[s]pecify **how** rental income received by a condominium
association after a foreclosure proceeding **shall be paid to
existing lien holders**."  Conf. Comm. Rep. No. 57, in 2013 House
Journal at 1539, 2013 Senate Journal at 799 (emphasis added).

> As the Committee on Conference recognized:
>
>> [T]he costs of default in a condominium are
>> substantially born by condominium associations and non-
>> defaulting unit owners and mortgagors in the affected
>> communities.  The lending industry also has an interest in
>> preserving the value of the condominium projects that make
>> up part of the lending industry's collateral.
>>
>> . . . [B]ecause there are legitimate but competing issues
>> relating to common assessments, the needs of the lending
>> industry and condominium associations and non-defaulting
>> unit owners must be appropriately balanced when attempting
>> to create a priority lien for common assessments.[16]  This
>> measure achieves this balance by providing condominium
>> associations and non-defaulting unit owners with relief
>> while also addressing interests of the lending industry.

Id.

Consistent with these determinations, the legislature
enacted the excess rental income provision to direct an
association to apply any rental income to those expenses incurred
due to the unit owner's default only to the extent necessary to
"provid[e] condominium associations and non-defaulting unit
owners with relief."  Id.  However, anything in excess of the
amounts necessary to accomplish that would be paid to existing

---

[16]    Prior versions of the bill sought to create an unlimited priority
lien for unpaid common assessments over the lien of any mortgage as a way of
assisting condominium associations with the collection of unpaid assessments.
H. Stand. Comm. Rep. No. 914, in 2013 House Journal, at 1225.

lienholders, thereby "addressing [the] interests of the lending industry." Id. Accordingly, the goal in enacting HRS § 514B-146(k) was not to ensure the AOAO's receipt of rental income after a foreclosure judgment but to specify the proper allocation of any such income between the AOAO and a mortgagee. In other words, while the statutory language may contemplate the AOAO receiving rental income from a unit after the entry of a foreclosure decree and judgment, it does not go so far as entitling the AOAO to such income.

Importantly, the excess rental income provision was enacted together with the provision entitling the association to a six-month special assessment specifically against a senior-mortgagee purchaser, which it previously was not entitled to. 2013 Haw. Sess. Laws Act 196, § 1 at 629 (eliminating language exempting a senior mortgagee from the subsection allowing for a special assessment against a subsequent purchaser); Conf. Comm. Rep. No. 57, 2013 House Journal at 1539, 2013 Senate Journal at 799; see also HRS § 514B-146(g) and(h) (Supp. 2017) (providing for special assessment). This supports a conclusion that the special assessment, rather than the excess rental income provision, was enacted to particularly benefit the association.

Accordingly, we conclude that HRS § 514B-146(k) does not affect the Circuit Court's equitable powers to appoint a

commissioner to take possession and control of the Property upon the entry of a foreclosure decree and judgment.[17] We conclude that the Circuit Court did not err or abuse its equitable powers in directing the Commissioner to take possession of the Property upon the entry of the Foreclosure Decree and Foreclosure Judgment.

     B.    <u>Payment of Rental Income to Bank of New York</u>

     The AOAO contends that the Circuit Court erred in the Foreclosure Decree, when it ordered the Commissioner to pay Bank of New York "all" of the rental income collected from the Property. To the extent that the AOAO's argument is based on its interpretation of HRS § 514B-146(k), we have rejected that argument above.

     Moreover, the Foreclosure Decree did not order payment to Bank of New York of "all of the rental income collected from the Property." Instead, the decree states, in pertinent part:

> [FOF] 16.  Defendant AOAO may continue collecting rental proceeds from the Property until the Commissioner is appointed herein.  Upon appointment of Commissioner, Commissioner shall collect the rental proceeds, the distribution of proceeds (if any) shall be determined at the confirmation hearing.
> . . . .

---

[17]    We note that the AOAO failed to discuss or even acknowledge that the Circuit Court granted in part the AOAO's Motion to Stay the Foreclosure Decree, to the extent that it authorized the Commissioner to take possession of the Property and to collect rents, with the posting of a supersedeas bond. We further note that, even though the AOAO apparently declined to post a bond, at the hearing on the Confirmation Order, the Commissioner represented that he had not collected any rents.

> [Order] 7. Upon confirmation of the sale, the Commissioner is authorized and directed, after the payment of all necessary expenses of such sale, to make application of all the proceeds thereof and all funds which they hold in their capacity as Commissioner so far as the same may be necessary to the payment of amounts found due and owing to [Bank of New York] from the [Former Owners] under the Loan Documents, including advances, title search fees, costs, expenses, and attorney's fees, as determined by this court.

The Circuit Court's order includes certain conditional occurrences (*e.g.*, the Circuit Court's confirmation of the sale, its determination of amounts due and owing to Bank of New York, the collection of any rental income by the Commissioner) before the Commissioner's payment of proceeds to Bank of New York might potentially include rental income collected from the Property. Accordingly, the AOAO's contention that the Circuit Court erred in the Foreclosure Decree when it directed all rental income to Bank of New York is without merit.

C.    Appeal from the Confirmation Order and Judgment

In its appeal from the Confirmation Judgment and Confirmation Order, the AOAO contends that the Circuit Court erred when it "purported to pass equitable and legal title to the Commissioner, effective November 29, 2017 [the date of entry of the Foreclosure Decree]," contrary to legal authority. The AOAO again cites the lien theory of mortgages, arguing that a borrower's default does not entitle a mortgagee to possession, rents, or profits. The AOAO asserts that it rightfully retained both equitable and legal title upon the entry of the Foreclosure

34

Decree, since the foreclosure sale had not yet been completed pursuant to HRS § 514B-146(b) and that, accordingly, the mortgagee did not acquire title to or the benefits of the Property until that time.

However, the AOAO does not explain how, by way of the Confirmation Order, the Circuit Court vested the Commissioner with title to the Property.[18] To the extent that the scope of the Commissioner's powers and directives are properly before this court, we have addressed it above, in conjunction with the AOAO's appeal from the Foreclosure Judgment and Foreclosure Decree.

Finally, the AOAO contends that the Circuit Court erred in ordering that "the rent on the Property collected by the Commissioner, if any, shall be paid to [Bank of New York] and forwarded in care of [Bank of New York]'s attorneys." The AOAO again cites HRS § 667-102(b) to argue that, as the owner of the Property, the AOAO was entitled to exclusive possession of the Property and to receive all rents obtained or collected from it,

---

[18] The AOAO also does not state where in the record the alleged error occurred and where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the Circuit Court. See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded[.]") The Foreclosure Decree does not purport to vest legal title in the Commissioner, although it authorizes and directs the Commissioner to make a delivery to the highest bidder "an appropriate instrument of conveyance of title to the Property upon confirmation of the sale" by the Circuit Court. In the Confirmation Order, *inter alia*, the Commissioner was authorized and directed to make a conveyance of title to the purchaser upon receipt of the full purchase price. The Confirmation Order concluded, *inter alia*, that upon the delivery to the purchaser of the conveyance, the interest of all named defendants in the property was terminated.

even after the entry of the Foreclosure Decree and Judgment. The AOAO further cites HRS § 514B-146(k) (Supp. 2017), arguing that the Circuit Court should have allowed the AOAO to retain rental proceeds from the Property until completion of the foreclosure sale under HRS § 514B-146(b).

As discussed above, HRS § 667-102(b) does not bar a Circuit Court's appointment of a commissioner upon the entry of a foreclosure decree and judgment.

Also as addressed above, HRS § 514B-146(k) (Supp. 2017) does not necessarily entitle the AOAO to receive rental income from a unit after the entry of a foreclosure decree and judgment in favor of the pre-existing mortgagee, but merely addresses the allocation of any such income.

Moreover, the Confirmation Order does not pertain to any income "received by the association" or otherwise affect the distribution or allocation of any such income.  Instead, it only concerns distribution of "the rent on the Property **collected by the Commissioner, if any**."  The Confirmation Order does not purport to entitle the Commissioner to the collection of rental income or Bank of New York to the receipt of all income received from the Property, in particular, the rents collected by the AOAO.

Accordingly, we conclude that the AOAO's appeal from the Confirmation Order is without merit.

V.    CONCLUSION

For these reasons, the Circuit Court's November 29, 2017 Foreclosure Judgment and July 5, 2018 Confirmation Judgment are affirmed.

On the briefs:                          /s/ Katherine G. Leonard
                                        Presiding Judge
R. Laree McGuire,
Jason K. Adaniya,                       /s/ Keith K. Hiraoka
(Porter McGuire Kiakona                 Associate Judge
 & Chow, LLP),
for Defendant-Appellant                 /s/ Sonja M.P. McCullen
 ASSOCIATION OF APARTMENT OWNERS        Associate Judge
 OF ELIMA LANI CONDOMINIUMS.

Charles R. Prather,
Peter T. Stone,
(TMLF HAWAII LLLC),
for Plaintiff-Appellee
 THE BANK OF NEW YORK MELLON FKA
 THE BANK OF NEW YORK AS TRUSTEE FOR
 THE CERTIFICATEHOLDERS OF THE CWABS
 INC., ASSET-BACKED CERTIFICATES,
 SERIES 2006-15.