**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-18-0000475
15-MAR-2023
07:52 AM
Dkt. 27 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

NATIONSTAR MORTGAGE, LLC,
Respondent/Plaintiff-Appellee,

vs.

ASSOCIATION OF APARTMENT OWNERS OF ELIMA LANI CONDOMINIUMS,
Petitioner/Defendant-Appellant,

and

THOMAS BLAKE K. DAVID; SARAH L. DAVID; THE BANK OF NEW YORK
MELLON, formerly known as THE BANK OF NEW YORK, as Trustee for
the Certificateholders of CWEHQ, Inc., Home Equity Loan Asset
Backed Certificates, Series 2006-S6; FIA CARD SERVICES, N.A,
Respondents/Defendants-Appellees.

SCWC-18-0000475

CERTIORARI FROM THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000475; CIVIL NO. 16-1-373K)

MARCH 15, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

The Association of Apartment Owners of Elima Lani Condominiums (AOAO) foreclosed on a unit owned by Thomas Blake K. David and Sarah L. David (the Davids) for failure to pay common assessments. Later, Nationstar Mortgage, LLC (Nationstar) filed a complaint for foreclosure of the unit alleging the Davids had defaulted on their mortgage. Almost two years after AOAO came into possession of the unit, the Circuit Court of the Third Circuit entered summary judgment and an interlocutory decree of foreclosure in favor of Nationstar. However, the circuit court did not confirm a foreclosure sale of the unit at a public auction until nearly eleven months later. AOAO contends that it is entitled to the rents that accrued from the unit during the period between summary judgment and the confirmation of sale.[1]

Under our precedents, a foreclosure judgment is a final judgment extinguishing the previous owner's interest in property. Thus, at common law, AOAO would not be entitled to post-foreclosure rents. However, and for the following reasons, we hold that Hawai'i Revised Statutes (HRS) § 514B-146(n) (Supp.

---

[1] The total amount of rents collected during this period was $6,200.

2015)[2] provides a scheme for distributing rents following a lender's foreclosure against an association. Here, provided AOAO has not already recouped its losses through the rent it previously collected, it may be entitled to all or some of the rent collected for Nationstar after summary judgment. Accordingly, we vacate the circuit court's judgment to the extent it awards post-foreclosure rents to Nationstar and remand for a calculation of what amount, if any, AOAO is owed from post-foreclosure rents.

## II. BACKGROUND

On July 24, 2015, AOAO foreclosed on the Davids' condominium for unpaid assessments via quitclaim deed, filed pursuant to the nonjudicial foreclosure process provided by HRS § 667, et seq. (2016).

On November 7, 2016, Nationstar filed a complaint for foreclosure in the circuit court, alleging the Davids had defaulted on a note and mortgage encumbering the unit and naming AOAO as one of the defendants.[3] AOAO answered, asserting its ownership interest in the property. Nationstar filed a motion

---

[2]    HRS § 514B-146(n) was numbered as HRS § 514B-146(k) before the statute was renumbered in 2018, and it is referred to as HRS § 514B-146(k) in the briefing. See 2018 Haw. Sess. Laws Act 195, § 4 at 672. Because there was no change to the substance of the statute, we refer to the current numbering, HRS § 514B-146(n), throughout. See id.

[3]    The Honorable Ronald Ibarra presided over the proceedings for summary judgment, while the Honorable Robert D.S. Kim presided over the proceedings to confirm the foreclosure sale.

for summary judgment.  It asked that the court appoint a commissioner and direct that person to "[p]ossess, preserve, operate and manage the Property . . . including, but not limited to, collecting rental payments and revenues," and to sell the property.

AOAO filed a memorandum in limited opposition to Nationstar's motion for summary judgment.  In relevant part, AOAO argued it remained the owner of the unit until a foreclosure sale was confirmed by the court, that it was entitled to exclusive possession and use throughout the foreclosure process, and that its right to collect post-foreclosure rents was reaffirmed by HRS § 514B-146(n).[4]

---

[4] HRS § 514B-146(n) provides:

> After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner.  For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for:
> (1) The lien for delinquent assessments pursuant to subsections (a) and (b);
> (2) Any maintenance fee delinquency against the unit;
> (3) Attorney's fees and other collection costs related to the association's foreclosure of the unit; or
> (4) Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees, real estate

The circuit court disagreed.  On June 30, 2017, it entered summary judgment against AOAO and an interlocutory decree of foreclosure in favor of Nationstar, finding that Nationstar was owed $382,957.56 in principal, interest, and costs.  Further, it appointed a commissioner to take possession of and sell the unit, and ordered:

> The Commissioner is authorized and directed, after the payment of all necessary expenses of such sale, to make application of all the proceeds thereof and all funds which they hold in their capacity as Commissioner so far as the same may be necessary to the payment of amounts found due and owing to [Nationstar] from the [Davids] under the Loan Documents . . . as determined by this court.

The unit was sold to Nationstar at a public auction on December 16, 2017.  Before the sale, the Commissioner collected $3,200 in total rents for the months of November 2017, December 2017, and January 2018.

Nationstar filed a motion to confirm the sale, requesting that "rent on the Property collected by the Commissioner, if any, shall be paid to Plaintiff . . . , which sum shall be credited against the amounts due Plaintiff under its Note and Mortgage."  AOAO again opposed the request for

---

> commissions, cleaning and repair expenses for the unit, and general excise taxes paid on rental income;
>
> provided that the lien for delinquent assessments under paragraph (1) shall be paid, credited, or reimbursed first.

rents, arguing that it was entitled to any rent collected up until the foreclosure sale.[5]

At the confirmation hearing, the circuit court disagreed that AOAO was entitled to the rents, and directed the Commissioner to pay all the funds in his possession to Nationstar. The Commissioner testified that in addition to the $3,200 in rents from November 2017 to January 2018, he had collected $1,000 in rent each month for February, March, and April, for a total of $6,200. The court entered an order confirming the foreclosure sale on May 16, 2018. Regarding rents, it denied AOAO's request for rental proceeds and ordered the rent be paid to Nationstar. AOAO filed a timely notice of appeal from the circuit court's judgment and order.

Before the Intermediate Court of Appeals (ICA), AOAO made a number of arguments as to why it retained legal and equitable title until after the foreclosure sale was confirmed. First, it argued that per the lien theory of mortgages, Nationstar had only a lien against the property until it was actually sold. AOAO cited HRS § 506-1(a) (Supp. 2015), which

---

[5] Alternatively, AOAO requested that, if the circuit court denied its request for rents, Nationstar be required to pay AOAO maintenance and reserve fees from June 30, 2017 – the date of the entry of summary judgment – to the sale's closing. The court stated that it would consider its request once AOAO submitted a ledger of what it was owed. While AOAO did submit a ledger, in its order confirming the foreclosure sale, the court did not address AOAO's alternate request for assessments.

provides that a mortgage "shall create a lien only as security for the obligation and shall not be deemed to pass title."  In the condominium context, HRS § 514B-146(b) (Supp. 2015)[6] provides that a mortgagee does not acquire title in a judicial foreclosure until after the confirmation of sale.

Second, AOAO argued that HRS § 667-102(b)(4) (Supp. 2013) provides that once an "affidavit and the conveyance document are recorded" in a nonjudicial foreclosure, "[t]he purchaser shall be entitled to immediate and exclusive possession of the unit."  Thus, the circuit court erred by

---

[6]     HRS § 514B-146(b) provides in relevant part:

> Except as provided in subsection (j), when the mortgagee of a mortgage of record or other purchaser of a unit obtains title to the unit as a result of foreclosure of the mortgage, the acquirer of title and the acquirer's successors and assigns shall not be liable for the share of the common expenses or assessments by the association chargeable to the unit that became due prior to the acquisition of title to the unit by the acquirer.  The unpaid share of common expenses or assessments shall be deemed to be common expenses collectible from all of the unit owners, including the acquirer and the acquirer's successors and assigns.  The mortgagee of record or other purchaser of the unit shall be deemed to acquire title and shall be required to pay the unit's share of common expenses and assessments beginning:
>         (1) Thirty-six days after the order confirming the sale to the purchaser has been filed with the court;
>         (2) Sixty days after the hearing at which the court grants the motion to confirm the sale to the purchaser;
>         (3) Thirty days after the public sale in a nonjudicial power of sale foreclosure conducted pursuant to chapter 667; or
>         (4) Upon the recording of the instrument of conveyance;
> whichever occurs first[.]

awarding the Commissioner legal and equitable title via the summary judgment order when AOAO was entitled to possession. Even if the circuit court had the equitable power to override AOAO's statutory right to exclusive possession and rents, to do so in this case would be inequitable, because while AOAO would have to burden other, non-defaulting owners with its losses, Nationstar "would be fully compensated upon the foreclosure sale."

Next, AOAO turned to its arguments regarding HRS § 514B-146(n). That statute "contemplates [AOAO] receiving rental income" after the foreclosure judgment as it "provides twice that rent shall 'be received by the association.'" Thus, the only instance in which Nationstar would be entitled to rental income is if excess rental income exists, computed as the amount of post-foreclosure rents "received by the association" after deducting the items listed in subsections (n)(1) to (4).[7]

In response, Nationstar argued that the circuit court properly distributed the rental income according to lien priority. It pointed to HRS § 667-102(b)(3) (Supp. 2013), which provides that an association's lien is "automatically

---

[7] Last, AOAO argued "[i]n the alternative and as a matter of equity," that it was entitled to common expenses assessed while the Commissioner was in possession. According to AOAO, "[i]t would be wholly inequitable to require [AOAO] to be responsible for the burdens of ownership . . . while simultaneously giving all of the benefits of ownership to the Commissioner for the eventual benefit of [Nationstar]."

extinguished" when the association completes a foreclosure. It also pointed to HRS §§ 667-3 and 667-10 (Supp. 2013), which provide that proceeds of a mortgage sale are distributed first to lien holders according to priority and then to the prior owner.

Further, Nationstar disputed AOAO's interpretation of HRS § 514B-146(n). Nationstar argued that this statute creates an entitlement to post-foreclosure rents for senior mortgagees, not associations. Nationstar claimed AOAO already recouped the delinquencies left over from the Davids, and AOAO had no maintenance costs following summary judgment as the Commissioner took possession.[8] This reading "harmonizes" HRS § 514B-146 with HRS §§ 667-3 and 667-10.

The ICA rejected AOAO's arguments and affirmed the circuit court's order confirming the foreclosure sale. First, it held that AOAO did not state how the circuit court "vested the Commissioner with title to the [unit]." The circuit court's foreclosure decree directed the Commissioner to take possession and control of the property, but it had not vested title in him.

---

[8] The AOAO alleged that the Davids left $34,002.57 in assessment arrears, recoverable under HRS § 514B-146(n)(1). However, the record does not indicate the amount AOAO was able to collect in rents from the property prior to the appointment of the Commissioner. Nationstar claims that this pre-foreclosure rental income exceeded the sum of the delinquencies, and that the AOAO is therefore not entitled to the $6,200 in post-foreclosure rents.

Second, the ICA concluded that AOAO's argument that it was entitled to rent after the entry of the foreclosure decree was without merit. For the reasons stated in U.S. Bank Tr., N.A. v. Chinen, 150 Hawai‘i 573, 583-84, 506 P.3d 869, 879-80 (App. 2022), the ICA concluded that the circuit court did not abuse its equitable discretion in ordering that the rents collected by the Commissioner be turned over to Nationstar.[9]

AOAO filed a timely application for writ of certiorari, arguing that the ICA erred by holding it was not entitled to rents. It reasserted that summary judgment does not extinguish the foreclosed owners' rights to possession because, per HRS §§ 514B-146(b) and (l),[10] a mortgage lender's foreclosure of an already-foreclosed condo is not complete until after the confirmation judgment.

Next, AOAO expanded on its interpretation of HRS § 514B-146(n). It explained that in 2013 the legislature amended HRS § 514B-146(n) to "specify how excess rental income received

---

[9] With regard to AOAO's argument that the circuit court should have ordered the Commissioner to pay the condo assessments accrued during the foreclosure to AOAO, the ICA held that the circuit court's failure to award AOAO this relief was not an abuse of discretion.

[10] As relevant here, HRS § 514B-146(i)(1) (Supp. 2018) defines the "completion" of the foreclosure as the recording of an affidavit in a non-judicial foreclosure pursuant to HRS chapter 667 or, in a judicial foreclosure, when the purchaser is deemed to acquire title under HRS § 514B-146(b).

10

by a condominium association after a foreclosure proceeding shall be paid to existing lien holders." (Quoting Conf. Comm. Rep. No. 57, in 2013 House Journal, at 1539, 2013 Senate Journal, at 799) (emphasis added).) The conference committee report also indicated a desire to balance the interests of condominium associations, mortgagors, and the lending industry.[11]

AOAO further argued that the ICA's interpretation of HRS § 514B-146(n) rendered it superfluous. If an association's interest is foreclosed by summary judgment and a commissioner is normally given possession and control in foreclosure, "then there is no situation where the [a]ssociation will ever receive rents following a mortgagee's foreclosure and there will never be a situation where excess rents are found to exist."[12]

In response, Nationstar argued that AOAO misinterpreted HRS § 514B-146(n). Rather than entitling AOAO to possession, "the statute mandates that Nationstar be paid any net rental income received by AOAO after the Foreclosure Judgment." It

---

[11]    AOAO further quoted language from the conference committee report that substantially tracked the language of subsection (n), namely by providing that "any excess rental income received by a condominium association after a foreclosure proceeding shall be applied to the benefit of the unit owner" and defining excess rental income as "net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee." (Quoting Conf. Comm. Rep. No. 57, at 2013 House Journal, at 1539, 2013 Senate Journal, at 799-800 (emphasis added).)

[12]    Additionally, AOAO repeated its argument that for any months that Nationstar is awarded rent, it should be credited for common assessments.

repeated that AOAO had already recouped its delinquencies and that it incurred no upkeep costs after the foreclosure – as the Commissioner was in possession – and therefore was not entitled to any rents collected after the summary judgment.

Next, Nationstar quoted Bank of N.Y. Mellon v. Larrua, 150 Hawai'i 429, 431, 504 P.3d 1017, 1019 (App. 2022), for the proposition that a foreclosure decree is a "final determination of a foreclosed party's ownership interests in the subject property."  In Larrua, as here, a lender foreclosed following an association's[13] previous foreclosure, and the circuit court appointed a commissioner to collect rents, which it later awarded to the lender.  Id. at 431-33, 38, 504 P.3d 1019-21. There, the ICA explained that the foreclosure decree extinguished the association's interests, and, even though legal title did not immediately pass, the circuit court had the equitable power to appoint a commissioner to take possession. Id. at 440, 504 P.3d at 1028.  So here, AOAO's interest was extinguished by summary judgment.

---

[13]     The defendant association in Larrua was the Association of Apartment Owners of Elima Lani Condominiums, the petitioner/defendant-appellant here.  Id. at 431, 504 P.3d at 1019.

## III. STANDARDS OF REVIEW

### A. Statutory Interpretation

"Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard." Guth v. Freeland, 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–85 (2001).

### B. Foreclosure Actions

> Foreclosure is an equitable action. "Courts of equity have the power to mold their decrees to conserve the equities of the parties under the circumstances of the case." A court sitting in equity in a foreclosure case has the plenary power to fashion a decree to conform to the equitable requirements of the situation. Whether and to what extent relief should be granted rests within the sound discretion of the court and will not be disturbed absent an abuse of such discretion.

Peak Cap. Grp., LLC v. Perez, 141 Hawai'i 160, 172, 407 P.3d 116, 128 (2017) (citations omitted) (quoting Honolulu, Ltd. v. Blackwell, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (App. 1988)).

A circuit court sitting in foreclosure abuses its equitable discretion "by issuing a decision that clearly exceeds the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of the appellant." Haw. Nat'l Bank v. Cook, 100 Hawai'i 2, 7, 58 P.3d 60, 65 (2002) (quoting Shanghai Inv. Co. v. Alteka Co., 92 Hawai'i 482, 493, 993 P.2d 516, 526 (2000)).

## IV. DISCUSSION

This application requires us to answer two questions: (1) whether, under our precedents, a foreclosed owner (in this case, the association) is entitled to exclusive possession and rents after the entry of summary judgment and an interlocutory decree of foreclosure, but prior to the confirmation of sale; and (2) if not, whether HRS § 514B-146(n) entitles the association to rents accruing during this period, or some portion of them, notwithstanding our precedents.

With respect to the first question, the ICA and Nationstar are correct that AOAO's right to possession was terminated by the foreclosure judgment.[14] We have long maintained that "[a] judgment of foreclosure of mortgage or other lien and sale of foreclosed property is final . . . on the ground that such judgment finally determines the merits of the controversy . . . ." MDG Supply, Inc. v. Diversified Invs., Inc., 51 Haw. 375, 380, 463 P.2d 525, 528 (1969). Unless provided otherwise by statute, AOAO was not entitled to rent or possession after the circuit court entered summary judgment in favor of Nationstar.

---

[14] The court granted Nationstar's motion for summary judgment, and issued a judgment of foreclosure against AOAO. The term "judgment of foreclosure" refers to the final determination in a judicial foreclosure proceeding, whether it is entered upon summary judgment or otherwise (for example, upon the defendant's default, or after trial).

14

As to HRS § 514B-146(n), the statute entitles associations to continue receiving rent after a subsequent mortgage foreclosure, even if a commissioner is appointed, subject to paying any rent received in excess of the total amount of the reimbursements enumerated in HRS § 514B-146(n)(1)-(4) over to the lienholders in order of priority. Nationstar's argument that rents received by a commissioner are not "received by the association" under the statute would result in the statute having no practical effect. Therefore, further proceedings are necessary to determine if AOAO was entitled to all or some portion of the rent collected after a commissioner was appointed.

**A. A Foreclosure Judgment Extinguishes the Prior Owner's Right to Possession, and a Commissioner May Take Possession Prior to a Foreclosure Sale**

**1. A foreclosure judgment is a final judgment extinguishing the prior owner's right to possession**

AOAO argues that because it owned the property, it should have been allowed to continue to hold possession and collect rent until a foreclosure sale was confirmed – that is, after the foreclosure judgment. The ICA in this case relied on Larrua. In Larrua, the ICA determined:

> [U]nder Hawai'i law, it is well-established that a judgment entered on a foreclosure decree is a final determination of the parties' rights in the subject property – in other words, the property owners' rights in the property are foreclosed, notwithstanding that further proceedings are necessary to enforce and otherwise

15

effectuate the foreclosure decree and judgment.
150 Hawai'i at 439, 504 P.3d at 1027.

The ICA is correct: the foreclosure judgment was a final judgment that cut off AOAO's right to possession. AOAO was therefore not entitled to continue collecting rent.

We have held that "[a] judgment of foreclosure of mortgage or other lien and sale of foreclosed property is final, although it contains a direction to commissioners to make a report of sale and to bring the proceeds into court for an order regarding their disposition." MDG Supply, 51 Haw. at 380, 463 P.2d at 528. This is because such a judgment "finally determines the merits of the controversy, and subsequent proceedings are simply incidents to its enforcement."[15] Id.; see also 55 Am. Jur. 2d Mortgages § 592 (2023) ("A mortgage-foreclosure decree is a final judgment even though it creates a right to redeem."). Thus, we have analogized a confirmation-of-sale proceeding to a "traditional 'action upon a judgment'" in that it merely "'facilitate[s] the goal of securing satisfaction of the original cause of action.'" Mortg. Elec. Registration Sys., Inc. v. Wise, 130 Hawai'i 11, 19, 304 P.3d 1192, 1200 (2013) (quoting Nat'l Union Fire Ins. Co. v. Owenby, 42 F. App'x 59, 63 (9th Cir. 2002) (mem. op.)). In other words, the

---

[15] HRS § 607-102(b) is not to the contrary, as it does not address an association's rights after a subsequent mortgage foreclosure.

proceedings that follow the judgment "are treated as incidental to enforcement of the foreclosure judgment." Id.

Here, then, AOAO's right to possession was terminated when the court adjudged its interest foreclosed.

**2.    A mortgagee may seek the appointment of a commissioner to cut off the prior owner's possession**

AOAO further argues that the appointment of a commissioner with authority to take possession and collect rent was in error because AOAO is entitled to the "benefits of ownership" until a foreclosure sale.  (Emphasis omitted.)  In support, AOAO cited HRS § 514B-146(b), which provides that a mortgagee does not acquire title in a judicial foreclosure until after the confirmation of sale.  However, Hawai'i courts may authorize a commissioner to take possession and collect rents where the collateral is inadequate to satisfy a mortgagee. HRS § 514B-146(b) establishes when a mortgagee or other purchaser must begin paying common expenses and assessments; it does not address the propriety of appointing a commissioner to take possession of the property and facilitate the foreclosure sale after the prior owner's interest has been deemed foreclosed.  Larrua, 150 Hawai'i at 441-42, 504 P.3d at 1029-30.

The appointment of a commissioner or a receiver is an equitable remedy designed to preserve the status quo and protect a lender's collateral.  "There is no doubt of the inherent power

17

of a circuit court sitting in equity or in probate to call to its aid special masters, auditors, examiners or even translators for the purpose of assisting the court . . . ."[16]  Haw. Ventures, LLC v. Otaka Inc., 114 Hawai'i 438, 485, 164 P.3d 696, 743 (2007) (brackets omitted) (quoting In re the Estate of Lee Chuck, 33 Haw. 220, 223 (Haw. Terr. 1934)); see also U.S. Bank Tr., N.A. v. Ass'n of Apartment Owners of Waikōloa Hills Condo. Phase I, 150 Hawai'i 573, 582, 506 P.3d 869, 878 (App. 2022) (holding that the appointment of a commissioner upon entry of foreclosure judgment was "consistent with the Circuit Court's equitable powers and standard practices").  The appointment of a commissioner is an appropriate remedy where the security for a mortgage appears to be inadequate:  "A court may exercise its equity jurisdiction in appointing a receiver if there is danger that the property will be insufficient security for the debt . . . ."  4 Richard R. Powell, Powell on Real Property § 37.26[4][c], at 37-175 (2022) (emphasis added).

The United States Supreme Court has confirmed that the foreclosed owner may continue in possession until its right of occupancy is cut off by a court-appointed receiver:  "[T]he general rule is that the mortgagee is not entitled to the rents

---

[16]     Hawai'i Rules of Civil Procedure (HRCP) Rule 66 (2018) preserves this authority: "The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed."

and profits of the mortgaged premises until he takes actual possession, or <u>until possession is taken in his behalf by a receiver</u>, or until, in proper form, he demands, and is refused, possession[.]" <u>Freedman's Saving & Tr. Co. v. Shepherd</u>, 127 U.S. 494, 502-03 (1888) (emphasis added) (citations omitted). This is because "[p]ossession draws after it the right to receive and apply the income." <u>Gilman v. Ill. & Miss. Tel. Co.</u>, 91 U.S. 603, 617 (1875).

Other jurisdictions have held that a prior owner or other tenant is entitled to possession and rents until the court appoints a commissioner. <u>See, e.g.</u>, <u>United States v. Am. Nat'l Bank & Tr. Co.</u>, 573 F. Supp. 1319, 1321-22 (N.D. Ill. 1983) ("Illinois law does hold that a mortgagor is entitled to rents collected from the mortgaged property until the mortgagee or receiver takes possession of the property . . . ."); <u>Hoelting Enters. v. Trailridge Invs., L.P.</u>, 844 P.2d 745, 749-50 (Kan. Ct. App. 1993) ("[A] purely executory agreement alone is not effective to vest in a mortgagee the right to rents and profits. The right to rents and profits may vest in a mortgagee, however, if . . . the mortgagor defaults and the court appoints a receiver . . . ." (citation omitted)); <u>cf.</u> <u>Schmalzl v. Peretta</u>, 276 N.Y.S. 224, 225 (N.Y. App. Div. 1934) (per curiam) (holding that a mortgagee was not owed rents collected during foreclosure where they did not demand possession of the premises).

In support, AOAO cited HRS § 514B-146(b), which provides that a mortgagee does not acquire title in a judicial foreclosure until after the confirmation of sale. However, the ICA was correct to hold in Larrua that HRS § 514B-146(b) simply establishes when a mortgagee or other purchaser must begin paying common expenses and assessments. 150 Hawai'i at 441-42, 504 P.3d at 1029-30. HRS § 514B-146(b) does not preclude appointment of a commissioner to take possession of the property and facilitate the foreclosure sale after the prior owner's interest has been deemed foreclosed. Id.

In sum, the appointment of a commissioner is an equitable remedy that cuts off the prior owner's possession and right to collect rent. Although the circuit court stated that the Commissioner would become the title owner of the unit, this was incorrect; the Commissioner is a neutral arm of the court holding the property on the court's behalf. In any case, however, AOAO's arguments that it was entitled to continue to possess the unit to the exclusion of the Commissioner are mistaken.

**B. HRS § 514B-146(n) Implicitly Abrogated the Common Law and Provided for Associations to Receive Post-Foreclosure Rent**

AOAO claims it is entitled to rents by virtue of HRS § 514B-146(n), which "contemplates the [a]ssociation receiving rental income from the [p]roperty following the issuance of a

foreclosure decree." Because HRS § 514B-146(n) twice mentions "income received by the association," AOAO argues it affirmatively grants associations the right to receive rents "after a court has issued a final judgment determining the priority of a senior mortgagee." Thus, AOAO should have received all rents collected by the Commissioner except to the extent they can be shown to be "excess rental income."

The ICA rejected this view, relying on its decisions in <u>Larrua</u> and <u>Chinen</u>. In <u>Larrua</u>, the ICA held that HRS § 514B-146(n) "addresses only how an AOAO must utilize any rental income it receives after its own foreclosure on the unit, when its interest is subsequently foreclosed upon by a mortgagee." 150 Hawai'i at 444, 504 P.3d at 1032. The ICA concluded that "while the statutory language [of HRS § 514B-146(n)] may contemplate the AOAO receiving rental income from a unit after the entry of a foreclosure decree and judgment, it does not go so far as entitling the AOAO to such income."[17] <u>Id.</u>

We disagree. The statute authorizes an AOAO's receipt of post-foreclosure rents and entitles the association to those rents up to the sum of the amounts in subsections (1)-(4). HRS § 514B-146(n) reads:

___

[17] In <u>Chinen</u>, the ICA relied on <u>Larrua</u> to reject an association's claim for rents based on HRS § 514B-146(n). 150 Hawai'i at 584, 506 P.3d at 880.

21

> After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner. For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for:

> (1)  The lien for delinquent assessments pursuant to subsections (a) and (b);

> (2)  Any maintenance fee delinquency against the unit;

> (3)  Attorney's fees and other collection costs related to the association's foreclosure of the unit; or

> (4)  Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees, real estate commissions, cleaning and repair expenses for the unit, and general excise taxes paid on rental income;

> provided that the lien for delinquent assessments under paragraph (1) shall be paid, credited, or reimbursed first.

The first clause provides that the statute only applies after an association has foreclosed. Id. The second clause provides that "excess rental income" shall be paid to senior lien holders by priority, to be applied for "the benefit of the unit owner." Id. In context, it is clear that "the unit owner" refers to the owner prior to the association, on whom the association foreclosed. See HRS § 514B-146(a) (Supp. 2015) (allowing the association, during its foreclosure, to collect a "reasonable rental" from "the unit owner").

In the second sentence of HRS § 514B-146(n), the words "final judgment determining the priority of a senior mortgagee" can only refer to a summary judgment and/or interlocutory decree of foreclosure, which, as discussed, is a "final judgment" under our precedent. See Peer News LLC v. City & Cnty. of Honolulu, 138 Hawai'i 53, 69, 376 P.3d 1, 17 (2016) ("The legislature is presumed to know the law when it enacts statutes, including this court's decisions . . . ."). Prior to such a judgment, the association's interest is unaffected. And the clause "after paying, crediting, or reimbursing the association or a third party" indicates that the AOAO or a third party — i.e., whomever is owed the costs enumerated in subsections (1) through (4) — will receive post-foreclosure rents up to the total amount of those costs.

Read literally, HRS § 514B-146(n) only applies when the rents are "received" by the association; arguably that would not be the case if a commissioner is appointed and authorized to collect rent. However, we interpret HRS § 514B-146(n) to apply to rental income received by the association after a mortgagee's subsequent foreclosure, whether or not a commissioner is appointed. The statute entitles the association to such income, however collected, but only to the extent it does not exceed the sum of the amounts listed in subsections (1) through (4). This statutory scheme thus replaces the equitable distribution that

23

our case law formerly required in cases where a commissioner was appointed.

This result is necessary for HRS § 514B-146(n) to have any logical effect. Appointment of a commissioner is common in foreclosures where the security is inadequate to satisfy a mortgage debt because it has substantial procedural advantages for the mortgagor.[18] If the appointment of a commissioner required that rent be awarded to the party that requested appointment notwithstanding HRS § 514B-146(n), the statute would only have practical effect in the very small number of cases where the mortgagor failed to have a commissioner appointed by the court. As argued by AOAO: "[u]nder the ICA's interpretation, HRS § [514B-146(n)] is superfluous. If at the summary judgment stage, the Association's interest is 'foreclosed' and a commissioner who is appointed is always given possession and control of the Property—including the rents, then there is no situation where the Association will ever receive rents following a mortgagee's foreclosure and there will never be a situation where excess rents are found to exist." We

---

[18] "[T]he commissioner takes possession of the mortgaged property and preserves the property for the benefit of the person or entity subsequently entitled to it." Larrua, 150 Hawai'i at 440, 504 P.3d at 1028; see also 1 Real Estate Finance Law § 4:33 (6th ed. 2016) (explaining that when foreclosing on properties, mortgagees generally prefer to seek appointment of a commissioner rather than obtaining possession themselves — even when the latter remedy is available — because it mitigates the need for an ejectment action, avoids accounting responsibilities, and insulates the mortgagor from tort liability).

hesitate to read HRS § 514B-146(n) to apply only in this highly unusual scenario.

The legislative history of HRS § 514B-146(n) supports this reading. The bill that enacted subsection (n) was a compromise between lenders and associations. The legislature found that "the costs of default in a condominium are substantially born by condominium associations and non-defaulting unit owners" and that "the needs of the lending industry and condominium associations and non-defaulting unit owners must be appropriately balanced . . . ." Conf. Comm. Rep. No. 57, in 2013 House Journal, at 1539, 2013 Senate Journal, at 799. "This measure achieves this balance by providing condominium associations and non-defaulting unit owners with relief while also addressing interests of the lending industry." Id. Indeed, an earlier version of the bill that enacted subsection (n) also provided an unlimited super-priority lien to associations for unpaid assessments, but the legislature eventually settled on a six-month lien. Compare H.B. 21, H.D. 1, 27th Leg., Reg. Sess. (2013), with 2013 Haw. Sess. Laws Act 196, § 1 at 629.

Thus, in enacting HRS § 514B-146(n), the legislature intended for a foreclosing association to be able to collect what it was due and no more; hence, the association is to receive all rents short of "excess rental income." Accordingly,

the statute calls for an accounting to take place upon confirmation.  The association must account for all rents from the time it foreclosed on the property.  If this amount exceeds the sum of the assessment and maintenance delinquencies, the costs of foreclosure, and the maintenance fees that accrued while the association was in possession, the AOAO is not entitled to retain rents accruing after the foreclosure.  However, if it still faces a shortfall even after the rent it collected, it may continue to collect rent short of "excess rental income."  HRS § 514B-146(n).  When a commissioner is in possession, the commissioner collects and holds the rent on behalf of the court, which will ultimately be distributed upon confirmation of the sale according to HRS § 514B-146(n).

This interpretation gives meaning to the common understanding of the word "excess" as "the state of . . . surpassing usual, proper, or specified limits."  Excess, Merriam-Webster's Collegiate Dictionary (11th ed. 2003).  "[E]xcess rental income" is income collected by an association above and beyond what it was owed by the prior owners and the costs it incurred.  There is no reason for the association to retain this amount while a mortgagee goes unpaid.  Thus, it is truly "excess" and must be paid to mortgagees to avoid creating an improper windfall for associations at the lenders' expense.

One final interpretative problem arises. HRS § 514B-146(a) provides that "[a]ll sums assessed by the association but unpaid for the share of the common expenses chargeable to any unit shall constitute a lien," and HRS § 514B-146(n)(1) allows the association to be paid, credited, or reimbursed for that lien before turning over any excess rental income. But where an association completes the HRS Chapter 667 power-of-sale foreclosure process, HRS § 667-102(b)(3) provides that "[t]he lien of the association . . . shall be automatically extinguished from the unit." Nationstar argues that because AOAO's lien was "automatically extinguished" under HRS § 667-102(b)(3) upon foreclosure, it could not have any entitlement to post-foreclosure rents. Nationstar further argues that under HRS §§ 667-3 and 667-10, proceeds from a foreclosure sale must first be distributed to the unpaid loan secured by the mortgage, with any remaining surplus distributed next to junior lienholders in order of priority, then to the owner, deducting any outstanding expenses owed.

However, HRS §§ 514B-146(n), 514B-146(a), and 667-102(b) can be reconciled. "[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal

by implication is disfavored."  Richardson v. City & Cnty. of Honolulu, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) (quoting Mahiai v. Suwa, 69 Haw. 349, 356-57, 742 P.2d 359, 366 (1987)).

HRS § 667-102(b) applies generally to association foreclosures, whether or not a lender subsequently forecloses. However, HRS § 514B-146(n) applies specifically to rent received "after a court has issued a final judgment determining the priority of a senior mortgagee."  Thus, while HRS § 667-102(b)(3) generally extinguishes the association's lien, this lien continues to exist solely for the purposes of the accounting in HRS § 514B-146(n), and the association may be paid, credited, or reimbursed for it.[19]

HRS §§ 667-3 and 667-10 generally govern how proceeds should be distributed among lien holders following a foreclosure sale.  HRS § 514B-146(n) specifically governs rents collected by an AOAO after a foreclosure sale and before confirmation. Rather than a strict allocation according to the priority of the lien under HRS §§ 667-3 and 667-10, these rents should be allocated according to HRS § 514B-146(n)(1)-(4).

---

[19]    As for the provision that the lien for delinquent assessments "shall be paid, credited, or reimbursed first," this provision merely directs that the association must first apply the rental income it receives to reduce the prior owner's continuing liability to it.  HRS § 514B-146(n).

In sum, HRS § 514B-146(n) created a scheme to divide post-foreclosure rents <u>whether or not</u> a commissioner is appointed, with the association retaining everything up to "excess rental income." We remand to the circuit court to apply this interpretation.[20]

## V.    CONCLUSION

For the foregoing reasons, the circuit court's May 16, 2018 confirmation judgment and the ICA's May 2, 2022 Judgment on Appeal are vacated with regard to the allocation of rents collected by the Commissioner. This case is remanded to the circuit court for further proceedings specifically to determine what portion of the rents collected by the Commissioner after the circuit court's June 30, 2017 Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment Against AOAO constituted excess rental income pursuant to HRS § 514B-146(n). Per that statute, AOAO is entitled to receive any portion of those rents that do not constitute excess rental income.

---

[20]    Because HRS § 514B-146(n) displaces the equitable principles that would normally govern allocation of rent in a proceeding where a commissioner is appointed, we do not reach AOAO's argument that the circuit court should have considered its request to be awarded the association fees that accrued while the Commissioner was in possession. However, we note as a general principle that where HRS § 514B-146(n) does not apply, a circuit court should consider the equities and allocate rents accordingly. Although rents collected by a foreclosure commissioner will normally be awarded to the secured party for whose benefit the proceeding was instituted, in some cases equity may require a different result.

R. Laree McGuire                    /s/ Mark E. Recktenwald
for Petitioner/
Defendant-Appellant                 /s/ Paula A. Nakayama

Kalama M. Lui-Kwan                  /s/ Sabrina S. McKenna
for Respondent/
Plaintiff-Appellee                  /s/ Michael D. Wilson

                                    /s/ Todd W. Eddins